Commonwealth *v.* Kennedy, Appellant.

Submitted November 8, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

484

reargument refused June 29, 1973.

*John T. Grigsby, III,* and *Eugene H. Clarke, Jr.,* for appellant.

*Norris E. Gelman* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, May 4, 1973:

The appellant, Howard Kennedy, was convicted by a jury of murder in the second degree, aggravated robbery, burglary and conspiracy. All of the crimes were based on and were allegedly committed in the perpetration of a robbery of a drug store in Philadelphia during which the druggist was fatally shot. After posttrial motions were denied, separate prison sentences of 10 to 20 years, to run consecutively, were imposed on the murder, robbery and burglary convictions. Sentence was suspended on the conspiracy conviction. A timely appeal from the judgment of sentence imposed on the murder conviction was filed in this Court.[1]

---

[1] Appellate jurisdiction of the judgments imposed on the robbery and burglary conviction is in the Superior Court. Act of July 31, 1970, P. L. 673, Art. III, §302, 17 P.S. §211.302. The record be-

Two assignments of error are asserted, but only one need be discussed herein.

Prior to trial the issue was raised as to whether or not Kennedy was competent to stand trial. After an extended hearing the trial court found he was so competent. On the record this ruling was incorrect.

At the pretrial competency hearing the following evidence was presented. Dr. Francis Hoffman, Director of the Neuropsychiatric Unit of the Court of Common Pleas in Philadelphia stated it was his opinion, after undertaking an examination of appellant in conjunction with the efforts of one Dr. VonSchlichten, that appellant was a paranoid schizophrenic and incompetent to stand trial. The foundation of the Doctor's opinion rested on the fact that throughout the period of examination, appellant did not in any way cooperate with the doctors, and it was the Doctor's judgment that this was not a deliberate refusal, but rather appellant was unable to cooperate because of his illness. The Doctor indicated this involuntariness would carry over to the efforts of appellant's trial counsel.

Dr. James Nelson, a certified neuropsychologist, also testified appellant was a paranoid schizophrenic and unable to stand trial. The Doctor stated appellant's paranoia rendered him incapable of trusting anyone and he would be unable to cooperate with his counsel even if it were to his own advantage.[2]

---

fore us does not indicate that appeals from these judgments were filed.

[2] Doctor Nelson stated:

"Suppose this man's only salvation—suppose he knew he was guilty, and suppose his only salvation—by salvation I mean get the best break possible, would be to cooperate with his counsel. The non-psychotic reasonable thing to do would be to cooperate, and try to get the best break you could get.

Lastly, Doctor Edward Guy,[3] Director of Psychiatric Services in the Philadelphia prison testified. While Doctor Guy would not say that appellant could not stand trial he expressed serious doubts as to whether appellant could stand trial because he could not cooperate with his attorney because he was suffering from paranoia.[4]

---

"This is one of the functions of a Court. Sometimes the Court is merciful.

"In this case, this man could not avail himself of the Court's mercy, even if the Court were merciful. Nor could he avail himself of the skills of his attorney, because he could not take—could not take them, he could not accept it."

[3] Doctor Guy, as well as Doctor Hoffman, undertook their examinations under direction of the court. Doctor Nelson was engaged by defense counsel to examine appellant.

[4] Doctor Guy stated the following in the course of his testimony:

"It is not as simple as willing to cooperate, because his intelligence and his judgment and his discretion are all seriously interfered with by this underlying mental illness, and so it becomes not a question will he cooperate, but it does become a question in my mind as to can he cooperate.

. . . .

"Well, it indicated to me that based on what Howard was telling me at that moment that he would wish to cooperate, and that in his mind at that time he seemed to be sincere, but I was still, you know, not convinced that he would based on the nonappearance of this other hypothetical lawyer, that he would then find himself suddenly able to get past his guarded, suspicious, negative kind of attitude even with his own counsel.

"I didn't know whether he would suddenly be able to reverse himself and trust his attorney or trust me or trust anyone else. I think that, as I say, all I can say is that I know he wishes that he could trust Mr. Clarke, but I am not sure that he does trust Mr. Clarke."

The following excerpts of the Doctor's report were read into the record:

"While it is apparent that much of his withholding of information is calculated and considered by him to be in his own best interests and is on a conscious level, he is also so suspicious and

It was also established at trial that for almost six years prior to the crimes appellant had been confined at Farview State Hospital. Moreover, at the close of the hearing appellant's trial counsel requested to withdraw from the case on the grounds he could not provide appellant with a proper defense, because appellant had completely refused to cooperate with him.

On the record there is no affirmative testimony appellant was competent to stand trial[5] and, in view of the substantial evidence appellant presented, we are left to conclude that the hearing judge's finding that appellant was competent to stand trial is not supported by the record.

It has long been established that a mentally incompetent person cannot be required to stand trial. Cf. *Commonwealth v. Scovern*, 292 Pa. 26, 140 A. 611 (1927). It is equally well established the person asserting mental incompetence to stand trial has the burden of proving incompetency by a preponderance of the evidence. Cf. *Commonwealth v. Carluccetti*, 369 Pa. 190, 85 A. 2d 391 (1952); *Commonwealth v. Simanowicz*, 242 Pa. 402, 89 A. 562 (1913).

In *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A. 2d 159 (1967), we pertinently stated the following with respect to what the defendant must establish: "[T]he test to be applied in determining the legal sufficiency of his mental capacity to stand trial,

---

evasive that I am not certain he could cooperate fully with anyone in preparing a defense. . . . I am fearful that his paranoid defense mechanisms may make it impossible for him to be sufficiently open with Mr. Clarke. He may will to cooperate but may not be able to because of his illness."

Although the Doctor only used the word "may" he could not discount the possibility the appellant would not cooperate.

[5] The appellant was not questioned at the hearing, so there was no way the hearing judge could have made an evaluation of the appellant.

or enter a plea at the time involved, is not the M'Naghten 'right or wrong' test, but rather his ability to comprehend his position as one accused of murder and to cooperate with his counsel, in making a rational defense. See Commonwealth v. Moon, supra, and Commonwealth ex rel. Hilberry v. Maroney, supra, at 544. Or stated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as factual understanding of the proceedings against him. See Dusky v. United States, 362 U.S. 402 (1960). Otherwise, the proceedings would lack due process: Bishop v. United States, 350 U.S. 961 (1956)." Id. at 495, 227 A. 2d at 160. See also *Commonwealth v. Harris,* 431 Pa. 114, 243 A. 2d 408 (1968).

The question squarely presented herein is whether appellant could cooperate with his attorney in preparing a meaningful defense. On the medical evidence presented, appellant met the burden the law places upon him and should have been declared incompetent to stand trial, because he was unable to cooperate with his counsel in preparing a defense to the charges against him. Two of the doctors unequivocally declared appellant incompetent because he was unable to cooperate because of his illness. The third doctor although unable to testify with certainty one way or the other, made it clear he had serious reservations as to appellant's ability to cooperate with counsel.

A man's right to a fair trial and a meaningful defense strike at the heart of due process of the law. If a defendant is incapable of cooperating with his defense counsel, because of mental illness he cannot take advantage of the basic protections the law affords to all men. Moreover, the United States Supreme Court, as well as this Court, have consistently ruled that legal counsel is an absolute necessity in a criminal trial, and,

yet, if a man is provided with counsel, but unable to cooperate with his counsel because of mental illness, the protections which counsel can provide become a nullity.[6]

Judgment reversed and new trial ordered if and when the appellant is competent to stand trial.

[6] In *Commonwealth v. Ragone*, 317 Pa. 113, 176 A. 454 (1935), the Court employed the following language in espousing the underlying theory for this principle of law: " 'The true reason why an insane person should not be tried, is that he is disabled by an act of God to make a just defense if he have one. As is said in 4 Harg. Stat. Tr. 205, "there may be circumstances lying in his private knowledge, which would prove his innocency, of which he can have no advantage, because not known to the persons who shall take upon them his defense." The most distinguished writers on criminal jurisprudence concur in these humane views, and all agree that no person, in a state of insanity, should ever be put upon his trial for an alleged crime, or be made to suffer the judgment of the law. A madman cannot make a rational defense, and as to punishment, furiosus solo furore punitur [a lunatic is punished by his madness alone]; 1 Hale's P.C. 34, 35; 4 Bl. Com. 395, 396; 1 Chit. Cr. L., ed. 1841, p. 761; 1 Russ. on Crimes, ed. 1845, p. 14; Shelf. on Lunacy, 467,* 468*; Stock on Non Comp. 35, 36': Freeman v. People, 47 American Decisions 216, 220. 'The inquiry into the guilt of a person accused of crime must be postponed where he is insane, until such time as he shall be able to properly model his defense': Frith's Case, 22 How. St. Tr. 307." Id. at 125-26, 176 A. 459.