674 A.2d 1044

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Hubert L. MICHAEL, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 26, 1995.

Decided April 17, 1996.

Bruce P. Blocher, York, for Hubert L. Michael, Jr.

Christy Fawcett, York, and Robert A. Graci, Attorney General's Office, for the Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION OF THE COURT*

CASTILLE, Justice:

This is an automatic direct appeal from the judgment of sentence of death imposed on appellant, Hubert Michael, by the Court of Common Pleas of York County. For the reasons set forth below, we affirm the judgment of sentence.

The underlying procedural history in this case establishes the following: On October 11, 1994, appellant was brought to trial in connection with the kidnapping and shooting death of 16 year-old Trista Eng.[1] During jury selection, appellant, through counsel, informed the trial court that he wished to waive his right to a jury trial and plead guilty to first degree murder and kidnapping. Following an extensive colloquy, appellant indicated that his waiver was knowing and voluntary and testified to the following: "I picked up Trista Eng on Route 15. Abducted her at gunpoint. Took her to the state game lands. At which point, when we got out of the car, I shot her three times intentionally." (N.T. 10/11/94 at 66).[2] When the Commonwealth asked appellant why he shot the victim, appellant stated that he thought that he had been unjustly accused of an unrelated rape charge in Lancaster County and stated, ". . . I was under a lot of pressure for the rape. I guess, I lashed out and angry [sic] and maybe I took it out on a woman because it was a woman who was doing this

---

1. Although the crime occurred in York County, appellant filed a motion for a change of venire which was granted by the trial court. Accordingly, jury selection proceeded in Berks County. *See* Pa.R.Crim.P. 312.

2. Although appellant does not challenge his guilty plea, a review of the guilty plea colloquy establishes that the trial court questioned appellant at length regarding whether his guilty plea was knowing and voluntary including, *inter alia*, that he had discussed the matter carefully with his attorney, that he understood the charges against him including the charge of first degree murder, his right to a jury trial or bench trial, the presumption of innocence, the Commonwealth's burden of proof, the right to confront the Commonwealth's witnesses, his waiver of those rights, his limited rights upon pleading guilty, the voluntariness of his plea, the elements of first degree murder, that the penalty for first degree murder is either life imprisonment or death which would be determined at a separate hearing, that his rights at the sentencing hearing including the right to present any mitigating circumstances, and that he was satisfied with counsel. (N.T. 10/11/94 at 50–75).

to me." (N.T. 10/11/94 at 74). The trial court accepted appellant's guilty plea to first degree murder and kidnapping and scheduled a non-jury sentencing hearing in the Court of Common Pleas of York County for October 17, 1994.

Six days after he pleaded guilty to first degree murder, on October 17, 1994, appellant informed the trial court that he wished to withdraw his guilty plea. The trial court denied the request, finding on the record that appellant's guilty plea was knowing and voluntary. (N.T. 10/17/94 at 5–8). Thereafter, pursuant to appellant's request that he be sentenced by a jury, the trial court continued the hearing so that a jury could be selected.[3]

On March 3, 1995, the sentencing court conducted a pre-sentencing conference, during which appellant indicated to the sentencing court that he did not want defense counsel to present any mitigating circumstances at the sentencing hearing. Nevertheless, the sentencing court instructed appellant's counsel to be prepared to present any possible mitigating circumstances for the sentencing hearing and informed appellant that it would be his option at the sentencing hearing to present any such mitigating circumstances.

At the sentencing hearing, on March 20, 1995, with jury selection set to begin, appellant again informed the sentencing court that he did not wish to present any evidence of mitigating circumstances. Appellant also informed the sentencing court that he wanted to waive his right to be sentenced by a jury and was willing to stipulate to the Commonwealth's two aggravating circumstances. The two aggravating circumstances presented by the Commonwealth were that: (1) the killing occurred during the perpetration of a felony, the felony of kidnapping, 42 Pa.C.S. § 9711(d)(6); and (2) that appellant had a significant history of felony convictions, including an attempted armed robbery conviction in 1974 and a 1994 rape conviction in Lancaster County, 42 Pa.C.S. § 9711(d)(9). Dur-

3. Due to the trial judge's poor health, the case was reassigned to another judge for sentencing.

ing a lengthy colloquy,[4] appellant stated that he had discussed his decision with his attorney and that he understood that if he stipulated to the aggravating circumstances and did not present any mitigating circumstances that the death penalty would be imposed.[5] Thereafter, the trial court found that the aggravating circumstances outweighed the mitigating circumstances and imposed the death penalty. (N.T. 3/20/95 at 17).

With respect to the claims now before us, we note at the outset that appellant, through his counsel's brief and through an affidavit signed by appellant subsequent to his sentencing, has expressed his desire to have his judgment of sentence of death affirmed by this Court.[6] Nonetheless, as is

4. Again the record reveals that the sentencing court conducted an extensive colloquy in order to make certain that appellant's stipulation was knowing and voluntary. The sentencing court expressly questioned appellant regarding whether he understood his right to present mitigating circumstances, his right to be sentenced by a jury, and that the jury might sentence appellant to life imprisonment rather than death if mitigating circumstances were presented. Appellant, however, responded that he understood these rights and the benefits of having mitigating circumstances introduced at his sentencing hearing but declined his right to do so. He further stated that he was satisfied with counsel. (N.T. 3/20/95 at 2–16).

5. In fact, when the sentencing court warned appellant that his decision not to present any mitigating circumstances would be to his detriment since it would result in the death penalty being imposed by the sentencing court when there was a possibility that a jury could sentence appellant to a life sentence, appellant responded that receiving the death penalty might not be a detriment. (N.T. 3/20/95 at 5).

6. On March 24, 1995, appellant signed an affidavit in the presence of his attorneys stating his intention to have the death penalty imposed. The affidavit states in full:

*AFFIDAVIT*

I, Hubert Lester Michael, Jr., having previously pled to Murder in the First Degree and Kidnapping on October 11, 1994, before the Honorable John T. Miller and state the following:

1. I understand that I had a right to a jury trial on both determination of my guilt or innocence and as to the death penalty phase, if necessary.

2. I understand that I waived my right to such a jury trial.

3. I understand that I could have been tried by a judge on both determination of my guilt or innocence and as to the death penalty phase, if necessary.

4. I understand I waived my right to Judge or Bench Trial.

5. I understand I could have pled guilty generally to Murder and had a degree of guilt hearing in which Judge Miller, after hearing

required in all cases in which the death penalty has been imposed, this Court must conduct an independent review of the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26, 454 A.2d 937, 942 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In reviewing the sufficiency of the evidence, this Court must determine whether the evidence was sufficient to establish that the factfinder could have reasonably determined that all of the elements of the offenses were proven beyond a reasonable doubt, viewing all of the evidence and the reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Walker*, 540 Pa. 80, 656 A.2d 90, 94 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995). In order to prove first degree murder, the Commonwealth must demonstrate that a human being was unlawfully killed, that the defendant did the killing, and that the killing was done in an intentional, deliberate and premeditated manner. *Common-*

testimony and reviewing evidence would make a decision as to the Degree of Murder.

6. I waived my right to a Degree of Guilt hearing because it was my desire to plead to Murder in the First Degree and Kidnapping, clearly understanding I will most likely receive the death penalty.

7. I understand that I could have had a Degree of Guilt hearing before Judge Miller and had a jury decide whether I receive life imprisonment or a death sentence.

8. I expressly waive my right to a jury determination as to my sentence.

9. I previously instructed my attorneys ... to present no testimony or evidence at trial or need be [sic] the Death Penalty phase.

10. I specifically confirm my direction to my attorneys not to call witnesses or present evidence during my sentencing hearing.

11. It is my understanding that I probably will receive a sentence of death.

12. Should I receive a sentence of death, I have instructed my attorney ... to forward this Affidavit to the Supreme Court of Pennsylvania.

13. It is my intent to inform the Pennsylvania Supreme Court that I am satisfied with my pleas of guilty and the sentence of death I receive in order that the Pennsylvania Supreme Court affirm as rapidly as permitted by law, the conviction and sentence.

14. Finally, my attorneys have reviewed this case and this Affidavit with me and I am satisfied with their representation.

*wealth v. LaCava,* 542 Pa. 160, 666 A.2d 221, 226 (1995). Furthermore, the use of a deadly weapon on a vital part of the body is sufficient evidence to prove the specific intent to kill. *Commonwealth v. Butler,* 446 Pa. 374, 378, 288 A.2d 800, 802 (1972); 18 Pa.C.S. § 2502.

Here, the evidence of record establishes that appellant's brother testified at the preliminary hearing that he visited appellant while he was incarcerated in the Lancaster County prison for an unrelated rape charge when appellant told him that he shot and killed a woman and hid her body in the State Game Lands in York County. Thereafter, appellant's brother, along with several other members of appellant's family, searched the area described by appellant and eventually found a badly decomposed body wearing the remnants of a Hardee's restaurant uniform. Appellant's family summoned the Pennsylvania State Police and the body was later identified as that of Trista Eng, the victim, who had been reported missing for approximately six weeks previously. On August 27, 1993, appellant was arrested and charged with the first degree murder.

At appellant's guilty plea hearing, appellant testified that on the morning of July 12, 1993, he drove his car alongside the victim while she walked to her summer job at Hardee's restaurant, and asked the victim if she wanted a ride to work.[7] The victim accepted his invitation and entered appellant's car. At some point thereafter, appellant pulled out a gun, threatened the victim and drove to a remote location in the State Game Lands in York County. Appellant then forced the victim out of the car and shot her with a .44 magnum: once in the chest, once in the back and once in the back of the head from a distance of five to six feet. Appellant then dragged the victim's body approximately thirty feet into some weeds in order to hide it.[8] When asked why he shot the victim,

7. Appellant testified that he did not know the victim prior to the day in question.

8. Approximately 10 days after the shooting, appellant fled the Commonwealth in a rented vehicle. After the rental agency reported the vehicle stolen, appellant was stopped and apprehended by the Utah State

appellant stated that he had recently been unjustly accused of rape by a woman in an unrelated matter in Lancaster County and that, therefore, he wanted to vent his anger on the victim since she too was a woman. Finally, when asked whether it was his intention to shoot the victim, appellant stated, "Probably." (N.T. 10/11/94 at 72). Clearly, the evidence of record, including appellant's admission to the kidnapping and murder under oath, is sufficient to support appellant's judgment of sentence for first degree murder.

Next, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court has a duty to affirm the sentence of death unless we determine that: (i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; (ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or (iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant. 42 Pa.C.S. § 9711(h)(3).

Upon reviewing the record below, we conclude that the sentence imposed upon appellant was not the product of passion, prejudice or any other arbitrary factor but, rather, was based upon the unrefuted evidence, much of which was provided by appellant's own statements and testimony. In the instant case, the two aggravating factors that were found were a killing during the perpetration of a felony and a significant history of felony convictions. 42 Pa.C.S. § 9711(d)(6) and (d)(9). The evidence that appellant picked up the victim by offering her a ride to work and then drove her to a remote location at gunpoint before shooting her three times at point blank range with a heavy caliber hand gun and that appellant was previously convicted of attempted armed robbery in 1974 and of rape in 1994, amply supports both aggravating circumstances. *See Commonwealth v. Miller*, 541 Pa. 531, 664 A.2d 1310, 1324 (1995) (evidence was sufficient to support both

Police on July 27, 1993. Appellant's .44 magnum was retrieved from the car.

aggravating circumstances where the victim was murdered during the course of her kidnapping and the defendant had a significant history of felony convictions). Where there are no mitigating factors and a finding of at least one aggravating circumstance, the sentencing court has no discretion but to impose the death penalty. *Commonwealth v. Smith*, 511 Pa. 343, 358–59, 513 A.2d 1371, 1378 (1986), *citing*, 42 Pa.C.S. § 9711(c)(1)(iv).

Additionally, in accordance with *Commonwealth v. Zettlemoyer*, 500 Pa. at 63, 454 A.2d at 961, this Court has conducted an independent evaluation of all of the cases decided as of September 13, 1978, in order to determine whether appellant's sentence was proportional to the sentences imposed in similar cases taking into consideration both the circumstances of the offense and the character and record of the defendant. *See Commonwealth v. Frey*, 504 Pa. 428, 443, 475 A.2d 700, 707–08, *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).[9] Our review reveals that where, as here, there are no mitigating circumstances present and the Commonwealth has proven that the defendant committed the killing during the perpetration of a felony and that the defendant had significant history of felony convictions, the defendant has been sentenced to death in virtually every instance. *See, e.g., Commonwealth v. Miller*, 541 Pa. 531, 664 A.2d 1310 (1995); *Commonwealth v. Rush*, 538 Pa. 104, 646 A.2d 557 (1994); *Commonwealth v. Rivers*, 537 Pa. 394, 644 A.2d 710 (1994); *Commonwealth v. Gorby*, 527 Pa. 98, 588 A.2d 902 (1991); *Commonwealth v. Williams*, 524 Pa. 218, 570 A.2d 75 (1990); *Commonwealth v. Tedford*, 523 Pa. 305, 567 A.2d 610 (1989); *Commonwealth v. Clayton*, 516 Pa. 263, 532 A.2d 385 (1987); *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371 (1986); *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984). *See* 42 Pa.C.S. § 9711(c)(1)(iv) (the verdict must be sentence of

**9.** In *Commonwealth v. Frey*, 504 Pa. at 443, 475 A.2d at 707–708, this Court ordered the President Judge of each county to supply the AOPC with information concerning each conviction for murder in the first degree including the facts and circumstances of each crime, the aggravating and mitigating circumstances, the age, gender, and race of both the defendant and the victim, and any other information pertaining to the conduct and prosecution of each case.

death if the trier of fact finds at least one aggravating circumstance and no mitigating circumstances). Therefore, we conclude that the sentence of death imposed upon appellant is not "excessive or disproportionate to the sentence imposed in similar cases." Accordingly, we affirm the judgment of sentence of death imposed upon appellant by the Court of Common Pleas of York County.[10]

MONTEMURO, J., who was sitting be designation, did not participate in the decision of this case.

10. Within ninety days of the date the sentence of death is upheld by this Court, the Prothonotary of this Court is directed to transmit to the governor's office the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).