755 A.2d 1274

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Hubert MICHAEL, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 24, 1997.

Decided July 20, 2000.

358

Billy H. Nolas, Philadelphia, for Hubert L. Michael.

Christy Haas Fawcett and Robert A. Graci, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal from the denial of post-conviction relief in a capital case. The background of the case was described fully in the opinion of the court on Michael's direct appeal from his death sentence, *Commonwealth v. Michael*, 544 Pa. 105, 674 A.2d 1044 (1996), and will be summarized briefly here.

On July 12, 1993, Michael offered to drive sixteen-year-old Trista Eng to her job at Hardee's Restaurant. After she was in his car, he threatened her with a .44 magnum, then drove her to a remote wooded area, shot her three times with the high-powered handgun, and hid her body in the undergrowth. While appellant was incarcerated on an unrelated charge, his brother, Boyd Michael, visited him in prison. Appellant described the details of the kidnapping and murder to his brother who, based on the information in appellant's confession, located the as yet undiscovered body of the victim, and reported it to the Pennsylvania state police.

Following appellant's arrest, Bruce Blocher, a criminal law attorney with fifteen years of experience as a public defender, was appointed to represent appellant.

Hubert Michael was sentenced to death following his guilty-plea conviction of kidnapping and murdering the young woman in cold blood. On March 24, 1995, during the pendency of his direct appeal, Michael, through counsel and by affidavit, expressed his desire to have his death sentence affirmed. *Id.*, 544 Pa. at 109–10 n. 6, 674 A.2d at 1046–47 n. 6. The judgment of sentence was affirmed by this court on April 17, 1996. *Id.*

Due to Michael's request for affirmance, the court did not consider any issues raised by appellant in his direct appeal, but limited its review to the sufficiency of the evidence, the possibility of arbitrariness in imposition of the sentence, evidence of at least one aggravating circumstance, and proportionality of the sentence to sentences in similar cases. *Id.*, 544

Pa. at 114, 674 A.2d at 1047–48. The court held that the evidence was sufficient to support the conviction of first-degree murder; that no passion, prejudice, or other arbitrary factor produced the death sentence; that there was sufficient evidence of two aggravating circumstances (*viz.*, killing during the perpetration of a felony—kidnapping—and a significant history of felony convictions—rape and attempted armed robbery); and that the sentence was not excessive or disproportionate to sentences in similar cases. *Id.* Accordingly, we affirmed the judgment of sentence.

Represented by new counsel from the Center for Legal Education, Advocacy & Defense Assistance, appellant filed a collateral petition under the PCRA. The trial court held a hearing, and subsequently denied relief. This is his appeal from the denial of his PCRA petition.

While this PCRA appeal was pending, Michael again expressed his unwillingness to contest his death sentence. He filed an affidavit, this time stating that he wanted to withdraw this PCRA appeal. Michael's counsel petitioned the court to deny his request, questioning his mental competence to make such a decision. Inasmuch as Michael's direct appeal had been truncated due to his request that the death sentence be affirmed, we remanded for a determination by the trial court whether Michael was competent to make the decision to discontinue this PCRA appeal.

On August 27, 1998 and February 23, 1999 the Court of Common Pleas of York County held hearings on Michael's mental competence, including psychiatric testimony on whether Michael's decision not to contest his death sentence might have been the product of an underlying mental illness. The court found that no mental illness had been established on the record, and the court certified the record to this court with a finding that, based on psychiatric and other evidence, Michael was competent to withdraw his PCRA appeal, despite his definite awareness that to discontinue the appeal would most likely lead to his execution.

Before this court could review the competency finding of the trial court, on January 28, 1999 Michael filed a new affidavit in which he asked this court to decide the merits of his PCRA appeal quickly, essentially repudiating his request to withdraw the appeal. We have decided, therefore, to review all the issues raised by Michael in this PCRA proceeding.

Michael raises nine issues in his appeal from denial of PCRA relief.[1] We have organized our discussion of the issues to group ones which share the same standard of review or other common factual or legal considerations which bear on our adjudication. Most, but not all, of the claims made by appellant allege ineffectiveness of counsel. A few of the claims are subject to specific statutory requirements not applicable to the others.

First, we will review the issues based on allegations of ineffectiveness of counsel. With respect to these issues, appellant must meet the standard set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987) and consistently reiterated and applied in subsequent cases. We have stated:

When an appellant argues that he was deprived of effective assistance of counsel, he must demonstrate, according to *Commonwealth v. Pierce* and its progeny: (1) that the

---

1. As presented in Michael's brief, they are:

    1. Whether appellant was denied effective assistance of counsel in relation to the trial court's improper denial of his requests to withdraw his guilty plea;

    2. whether appellant was denied effective assistance of counsel in relation to the trial court's improper denial of his requests for different counsel;

    3. whether appellant's guilty plea was entered as a result of ineffective assistance of counsel;

    4. whether appellant's counsel was ineffective for failing to investigate and present significant indicia of his incompetency;

    5. whether the stipulated-to death penalty is constitutionally unreliable;

    6. whether ineffective assistance of counsel at capital sentencing rendered the death sentence constitutionally infirm;

    7. whether it was error to permit appellant to plead guilty to first-degree murder without holding a degree-of-guilt hearing;

    8. whether appellant is entitled to relief from his kidnapping conviction; and

    9. whether appellant is entitled to relief due to cumulative error.

underlying claim is of arguable merit; (2) that counsel's performance was unreasonable; and (3) that counsel's ineffectiveness prejudiced defendant. Also, post-conviction review of claims previously litigated on appeal cannot be obtained by alleging ineffectiveness of prior counsel and by presenting new theories of relief to support previously litigated claims. Further, counsel cannot be considered ineffective for failing to assert a meritless claim.

Appellant is required by 42 Pa.C.S. § 9543 to demonstrate eligibility for relief under the PCRA. Section 9543(a) mandates that appellant's allegation of error has not been previously litigated and that other conditions have been met. According to 42 Pa.C.S. § 9544(a)(2), an issue has been previously litigated when "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. . . ."

*Commonwealth v. Peterkin,* 538 Pa. 455, 460–61, 649 A.2d 121, 123 (1994), *cert. denied,* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995) (citations omitted). A PCRA petitioner must also plead and prove that the allegation of error has not been waived. According to 42 Pa.C.S. § 9544(b), "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." An additional requirement, relevant to one of Michael's claims, is that a petitioner claiming that his guilty plea was unlawfully induced must also plead and prove that the circumstances make it likely that he is innocent. 42 Pa.C.S. § 9543(a)(2)(iii).

The first issue based on ineffectiveness is whether it was error for the trial court to deny Michael's request to withdraw his guilty plea prior to trial, and whether trial counsel provided ineffective assistance with respect to this issue. Michael argues that the trial judge, in refusing the request, violated the holding in *Commonwealth v. Forbes,* 450 Pa. 185, 299 A.2d 268 (1973), that a petition to withdraw a guilty plea should be granted liberally, and *must* be granted if there is any fair and just reason therefore and if it will not substantially prejudice the prosecution. Michael claims that the trial court erred in

denying withdrawal of his guilty plea based on the court's insufficient finding that the prosecution would be prejudiced "to some extent" or "in any way" or that there would be a "great financial burden to the Commonwealth," or that withdrawal of the plea "would result in substantial delay." *Forbes, supra,* requires substantial prejudice; appellant argues that the trial court ignored the requirement that prejudice be *substantial,* and claims that the examples of "prejudice" cited by the court do not rise to the level contemplated by the supreme court in *Forbes.*

Two omissions require rejection of appellant's argument. First, it ignores the dual requirements of *Forbes*— there must first be an allegation of a fair and just reason for the withdrawal of the guilty plea before the question of prejudice arises. At the time of Michael's request to withdraw his plea, he alleged nothing that would justify withdrawal. His petition was based only on allegations that he was incompetent at the time of entering the guilty plea and that he was experiencing an inability to communicate with trial counsel. These claims are belied by the record and have been litigated adversely to Michael. It was not error to deny a petition which failed to allege any good ground for withdrawal of the plea. Second, appellant argues ineffectiveness in a vacuum. He suggests nothing that trial counsel should have done to obtain permission for appellant to withdraw his guilty plea. There are no allegations with respect to this issue which would satisfy the requirements of *Commonwealth v. Peterkin, supra,* that counsel's act or omission was substandard, that there was no reasonable basis for it, and that appellant was prejudiced, *i.e.,* the outcome of trial would likely have been different were it not for the questionable act or omission. Failure to allege what course counsel should have pursued in order to provide effective assistance precludes review by an appellate court. *Commonwealth v. Pettus,* 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981) ("Assertions of ineffectiveness in a vacuum cannot be ineffectiveness."). We hold that Michael has not established ineffectiveness of counsel with respect to withdrawal of his guilty plea.

■ Michael's next argument is that trial counsel was ineffective in assisting him to obtain different counsel and that the trial court erred in denying him new counsel.

Again, Michael fails to specify what course his counsel could or should have pursued which would have constituted effective assistance. This omission cannot support a finding of ineffectiveness as it fails to fulfill the prefatory, foundational need to demonstrate that counsel's course of conduct was actually substandard or questionable. This constitutes a violation of *Pettus, supra,* as it provides the court with no basis to evaluate counsel's performance and destroys the argument of ineffectiveness. Without ineffectiveness, the issue has been waived for failure to raise the issue on direct appeal. 42 Pa.C.S. § 9544(b).

■ Michael's next contention is that his guilty plea was the product of ineffective assistance of counsel. The gist of the argument is that, after he had confessed that he committed the murder and had provided corroborating evidence, when he decided a year later to change his story and claim he had nothing to do with the crime counsel was somehow remiss in refusing to assist him in presenting the new story at trial and thereby unlawfully inducing Michael's guilty plea, which was rendered involuntary by counsel's ineffectiveness. The crux of counsel's alleged ineffectiveness was in concluding, without any investigation, that the exculpatory story was a complete fabrication.

We stated in *Commonwealth v. Fahy,* 549 Pa. 159, 164–65, 700 A.2d 1256, 1259 (1997):

The defendant in *Michael* waived his right to a trial and pleaded guilty to first degree murder and kidnaping [sic]. Before accepting the guilty plea, the trial court conducted an extensive colloquy to determine if the waiver was knowing and voluntary. The court questioned the defendant in order to determine:

That he had discussed the matter carefully with his attorney, that he understood the charges against him including the charge of first degree murder, his right to a

jury trial or bench trial, the presumption of innocence, the Commonwealth's burden of proof, the right to confront the Commonwealth's witnesses, his waiver of those rights, his limited rights upon pleading guilty, the voluntariness of his plea, the elements of first degree murder, that the penalty for first degree murder is either life imprisonment or death which would be determined at a separate hearing, that his rights at the sentencing hearing includ[e] the right to present any mitigating circumstances, and that he was satisfied with counsel.

*Id.,* [544 Pa.] at 108 n. 2, 674 A.2d at 1045 n. 2.

At the sentencing phase, the defendant in *Michael* stipulated to the aggravating circumstances and waived his right to present any mitigating circumstances. The trial court again conducted an extensive colloquy to determine whether petitioner understood that, if he entered into the stipulation and waived his right to present mitigation evidence, the death penalty would be imposed. The court asked if he understood that he had a right to have a jury impose sentence and that a jury might sentence him to life imprisonment. This court held that under the facts in *Michael* the trial court appropriately accepted the defendant's waivers.

The *Fahy* synopsis and the opinion in *Michael* itself clearly establish that this issue was previously litigated. Title 42 Pa.C.S. § 9544(a)(2) precludes revisitation of the issue.

■ The next issue is whether Michael's counsel was ineffective for failing to investigate and present significant indicia of his incompetency to stand trial. Appellant argues that to subject a defendant to trial when he is incompetent is a violation of due process. *Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). He argues that counsel was or should have been aware that Michael had been a failure in school, had "learning problems," had "attempted suicide" and "suffered depression," was "very emotional," "cried," was "withdrawn," "moody," "isolated," "defensive," and "upset," experienced "major mood swings," and "suffered an abusive and neglectful childhood." The argument is that

all these factors should have alerted counsel to the possibility that Michael might have been incompetent, obligating counsel at least to conduct an investigation including evaluation by mental health experts, in order to protect the accused from being subjected to criminal proceedings when he may have been incompetent.

The issue of Michael's competency has been litigated numerous times in numerous contexts during the prosecution of this case. He has failed to establish incompetency at any stage of this litigation, and has thus failed to meet his burden of proof under *Commonwealth v. Kennedy*, 451 Pa. 483, 487, 305 A.2d 890, 892 (1973) ("[T]he person asserting mental incompetence to stand trial has the burden of proving incompetency by a preponderance of the evidence."). To couch the competency question in terms of ineffectiveness of counsel is merely to restate the issue in a new guise; the issue has been finally litigated, however, and appellant is entitled to no relief. We stated in *Commonwealth v. Henry*, 550 Pa. 346, 367, 706 A.2d 313, 323 (1997), that "a defendant cannot obtain post-conviction review of previously litigated claims by alleging ineffective assistance of counsel and presenting new theories of relief," citing *Commonwealth v. Peterkin, supra.*

█ Michael's next argument is that trial counsel's ineffectiveness at capital sentencing rendered the death sentence constitutionally infirm. The basis of this claim is that the stipulation of two aggravating circumstances—a significant history of prior felony convictions and killing during the perpetration of a felony—proves ineffectiveness of counsel because both aggravating factors were debatable. Moreover, counsel's stipulation that there were no mitigating factors was a knowingly false representation which violated the rules of ethical conduct, according to Michael. Finally, he argues that counsel was obligated to investigate and present indicia of Michael's mental shortcomings and psychological burdens known to counsel, and was ineffective in failing to do so.

Rule 1.2 of the Pennsylvania Rules of Professional Conduct provides in pertinent part:

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued. . . . In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

Counsel was ethically obligated to abide by Michael's decision with regard to his guilty plea as well as his refusal to present evidence of mitigation. There is therefore no ground for alleging ineffectiveness in these aspects of trial counsel's representation. In addition, as Michael presents this claim as a constitutional deprivation, he must plead and prove that the violation so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(I). (See discussion of the statute infra.) This Michael has absolutely failed to do, and is therefore entitled to no relief on this claim.

The remaining arguments are not presented in terms of ineffectiveness of counsel, but allege trial court error or constitutional deprivations. The standards applicable to these issues are as follows. When alleging that the conviction or sentence resulted from a violation of the state constitution or the constitution or laws of the United States, the petitioner must plead and prove by a preponderance of the evidence that the violation, "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i). We have held that the same standard applies in penalty-phase proceedings, though, arguably, the question of guilt or innocence is, at that stage, no longer at issue. *Commonwealth v. Chester*, 557 Pa. 358, 374, 733 A.2d 1242, 1250 (1999).

The first of these claims is that Michael's "stipulated-to" death penalty is constitutionally unreliable. He stipulated that there were two aggravating circumstances and no mitigating circumstances, requiring a death sentence. Michael cites *Lockett v. Ohio*, 438 U.S. 586, 602, 98 S.Ct. 2954, 57

L.Ed.2d 973 (1978), for the proposition that "[p]resentation and consideration of mitigating evidence is ... an absolute prerequisite to the constitutional imposition of death," in the words of Michael's brief.

Contrary to Michael's characterization of the decision, however, a plurality in *Lockett* concluded that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604, 98 S.Ct. at 2964–65, 57 L.Ed.2d at 990 (emphasis in original). The *Lockett* plurality prohibits statutes which preclude the sentencer from considering evidence of mitigation *"that the defendant proffers. ..." Id.* (emphasis added). Contrary to appellant's representation, the decision does *not* require a defendant to present mitigating evidence.

■ The next issue is whether the trial court erred in permitting Michael to plead guilty to first-degree murder and in failing to hold a degree-of-guilt hearing. Michael alleges that such a procedure is not permitted under this court's precedents nor under Pa.R.Crim.P. 353, and, furthermore, violated his right against self-incrimination guaranteed by the federal and state constitutions.

We cannot review this allegation again, as it has been previously litigated and has been waived. On direct appeal, this court conducted an independent review of the record to determine whether there was sufficient evidence to support Michael's plea to first-degree murder and imposition of the death sentence. Michael's plea and judgment of sentence were affirmed. *Michael, supra.* Regarding the validity of the guilty plea and waiver here, see *Fahy, supra,* 549 Pa. at 164–65, 700 A.2d at 1259. Thus, the validity of the plea proceeding was previously litigated and is not cognizable under the PCRA. *Commonwealth v. Henry, supra;* 42 Pa.C.S. §§ 9543(a)(3) and 9544(b). In addition, Michael could have challenged the legality of the guilty plea proceeding on direct

appeal and failed to do so. The claim was waived, and is therefore not permissible under the PCRA. *Henry, supra,* and 42 Pa.C.S. §§ 9543(a)(3) and 9544(b).

■ The penultimate issue is whether Michael is entitled to relief from his kidnapping conviction. Michael notes the crucial nature of this conviction, as it constituted a ground for one of the aggravating circumstances supporting his death penalty. He alleges that there was no evidence of the specific intent required for the crime of kidnapping. This issue, however, was also litigated on direct appeal, *Michael, supra,* 544 Pa. at 112, 674 A.2d at 1048, and is therefore not subject to review in this collateral proceeding. 42 Pa.C.S. §§ 9543(a)(3) and 9544(b).

Finally, Michael argues that "the cumulative effect of counsel's serious failures, and of other constitutional errors, so undermined the fairness of the proceedings that [his] conviction and sentence must be vacated."

Appellant has not established any instance of counsel's ineffectiveness nor any other constitutional deprivation. There can be no cumulative effect of prejudice when there was no harm in the first instance. *Commonwealth v. McGill,* 545 Pa. 180, 189, 680 A.2d 1131, 1136 (1996).

Having reviewed all of the claims raised by appellant in this appeal and found them to be without merit, we will affirm the trial court's denial of PCRA relief.

Judgment affirmed.

Justice CASTILLE files a concurring opinion.

Justice ZAPPALA, Justice CAPPY and Justice NIGRO concur in the result.

Justice SAYLOR files a dissenting opinion.

CASTILLE, Justice, concurring.

I join in the majority opinion with the exception of the explanation of why it reaches the merits of appellant's claims

in this case where appellant has, at various times, expressed a desire not to proceed with his appeal.

On April 16, 1998, after this PCRA appeal had been briefed and submitted to the Court, appellant wrote to the Commonwealth requesting that it forward to the appropriate court a letter in which he stated that he did not wish to pursue any further appeals. Based upon that letter, the Commonwealth requested a remand to the PCRA court for a colloquy under *Commonwealth v. Fahy*, 549 Pa. 159, 700 A.2d 1256 (1997), *i.e.*, to determine whether appellant was competent to waive further collateral review. Over the opposition of appellant's counsel, we remanded the case to the PCRA court on July 9, 1998, directing it to conduct a colloquy to determine whether appellant fully understood the consequences of his request to withdraw his appeal and waive further collateral review. At the August 27, 1998, remand hearing, the PCRA court conducted a thorough colloquy during which appellant reiterated his desire to withdraw this appeal and not to pursue any "further court litigation." At the conclusion of the hearing, the court found, as a matter of fact, that appellant fully understood the consequences of his request. N.T. 8/27/98 at 4–7, 16.

On December 8, 1998, upon consideration of the colloquy transcript, this Court remanded to the PCRA court for another hearing to augment the record to include psychiatric evidence relating to appellant's withdrawal request, including whether, as appellant's counsel claimed, an underlying mental illness was the predicate for appellant's request. The PCRA court scheduled the hearing for February 23, 1999. However, on February 18, 1999, appellant's counsel wrote to the court and attempted to have the hearing cancelled, on the ground that appellant had prepared a new affidavit on January 28, 1999. In that affidavit, appellant averred that he did not wish to undergo any psychiatric examination, nor did he wish to undergo "any proceedings in York County about my desires with regard to my case." Instead, appellant now claimed to prefer a "quick decision on the merits" of his pending appeal in this Court, requesting that his appeal "be moved up ahead

of other cases." The PCRA court denied the request to cancel the hearing.

At the February 23, 1999, hearing, Dr. Larry A. Rotenberg, a board-certified psychiatrist and neurologist and director of psychiatry at the Reading Hospital and Medical Center, testified that appellant suffered from no major mental illness, but had a narcissistic personality disorder, which led him to believe that he was entitled to special treatment. N.T. 2/23/99 at 8–13. Dr. Rotenberg's opinion was based in part upon a psychiatric evaluation he completed on December 12, 1996, in anticipation of appellant's trial, since Appellant had refused to submit to a new examination. Dr. Rotenberg further stated that appellant's desire to waive further collateral review was not based on a mental illness, but rather upon his desire for a speedy resolution to his appeal because he could not tolerate delay. Specifically, Dr. Rotenberg, who observed appellant testify at the hearing, testified that "[t]he Defendant [today] showed himself to be lucid, coherent and somewhat manipulative, and so it showed him to be logical, . . . nondepressed, nonpsychotic, nondemented, and not suffering from any mental illness." *Id.* at 38.

At the same hearing, the PCRA court asked appellant whether his January 28, 1999, letter requesting a speedy resolution of his appeal represented a change in his wishes:

> Court: [I]n your affidavit you state that you want your issues decided quickly by the Pennsylvania Supreme Court. To me that indicates that you do want your appeal decided and you are changing your mind and you are no longer saying withdraw the appeal.
>
> [Appellant]: I guess we could sum it up by saying, I want this to move forward as fast as possible. I would like it to go into the Supreme Court and have them settle it one-way [sic] or another.

*Id.* at 32–33. This testimony certainly seemed to corroborate Dr. Rotenberg's opinion. At the conclusion of the hearing, the PCRA court found appellant "mentally competent" and also found that there was no "mental health component" to his

previous request to withdraw his appeal and waive further review. N.T. 2/23/99 at 41. The court also recognized, however, that appellant's January affidavit, the import of which he essentially adopted in his testimony at the February hearing, suggested a "change of mind."

Before we could rule on the appeal, including the question of whether appellant had validly waived his right to further collateral review, appellant apparently changed his mind yet again. In a letter dated June 17, 1999, and addressed "To the Courts," but forwarded to the Commonwealth, appellant again stated that he does not wish to pursue any further appeals.[1] The Commonwealth included that letter as an Exhibit to a Motion to Dismiss appellant's appeal on the ground that, through the letter, he had again indicated a desire not to pursue further review. Appellant's counsel filed an answer in opposition, stating that, at best, the letter allegedly written by appellant was another example of appellant's "vacillation" concerning his desire to pursue further review.

In explaining why it is reviewing appellant's claims on the merits, the majority refers only to appellant's January 28, 1999, affidavit, which it construes as "essentially repudiating" his previous request to withdraw the appeal. Majority Op. at 1276. If that were all there was to this question, I could not agree, as I believe such reasoning to be inconsistent with this Court's opinion in *Fahy, supra.*

---

**1.** The June 17, 1999, letter reads as follows:

To the Courts:

I would like it known that I, Hubert Michael, do not wish to have any further appeals regarding my homicide conviction in York county. Nor do I wish any appeals regarding any other convictions. I pled guilty to homicide because I was guilty. I was not coerced into making this plea, nor was I promised anything in return for making this plea.

There are no insanity issues to be raised in this case. I was of sound mind at the time of the homicide. I was of sound mind at the time of my arrest. I was also of sound mind during all court proceedings, and I am of sound mind as I type this letter.

The attorney's [sic] who claim to represent my best interests in court are only trying to promote their own agenda. As they are opposed to the death penalty. They know in their hearts that I am mentally competent, and have in fact expressed this to me in conversation.

While Fahy's serial PCRA appeal was pending before this Court, Fahy filed a handwritten petition asking this Court to allow him to waive all collateral proceedings and to withdraw any appeals so that his death sentence could be carried out. Fahy's appointed counsel subsequently requested a remand to determine whether Fahy was competent to waive all collateral proceedings. We remanded the matter for a colloquy to determine whether Fahy fully understood the consequences of his request to withdraw his appeal and to waive all collateral proceedings. On remand, the PCRA court conducted a full colloquy during which Fahy testified consistently with his petition, *i.e.*, he did not want any further petitions filed by his appointed counsel or by counsel from the Center for Legal Education, Advocacy and Defense Assistance (CLEADA), who had involved themselves in the case. After conducting a full colloquy, the PCRA court found that Fahy was competent and that he knowingly waived his right to further collateral and appellate review. 549 Pa. at 164, 700 A.2d at 1259.

Notwithstanding Fahy's stated desires on the record, counsel from CLEADA filed an appeal, ostensibly on Fahy's behalf, alleging that Fahy did not actually waive his rights to collateral and appellate review. CLEADA's position was based upon a non-record "declaration" purportedly made by Fahy, as well as a "declaration" from CLEADA counsel, both dated after the waiver hearing, which would impeach the record evidence of waiver. Upon review, we affirmed the finding of waiver. We noted that the trial court had conducted a colloquy during which Fahy "clearly and unambiguously" waived his right to further review and stated that he did not want his attorneys to file any further appeals or petitions on his behalf. Fahy's representations, we noted, led the PCRA court to accept his waiver. We determined that the PCRA court's waiver colloquy was adequate. Furthermore, with respect to CLEADA's claim that Fahy's waiver was not knowing and voluntary, we noted that "[t]here is literally nothing in the record to support counsel's representation." 549 Pa. at 165, 700 A.2d at 1259.

Under *Fahy,* the January 28, 1999, affidavit cited by the majority most certainly cannot undo a *record* waiver of further review. But, as I have detailed above, there in fact is *record* evidence of appellant's desire to pursue the appeal in this case. That is because the January 28 affidavit was actually introduced at the February 23 hearing and, more importantly, appellant testified at that hearing to a desire to pursue the appeal. This fact, and not the existence of a non-record "affidavit," distinguishes *Fahy.*

But the matter is still not so simple. The record evidence regarding appellant's desire to pursue this appeal is equivocal at best. At one hearing, appellant insisted that he did not wish to pursue his appeals. At the next hearing, he stated the opposite. Shortly thereafter, he purportedly wrote another letter reverting to his waiver position. Moreover, given the nature of our remand orders, we do not have a finding regarding waiver at any particular point in time; instead, we have fully supported findings that appellant is competent to make that determination, and that he understands the consequences of a decision to waive.

At this point, it seems to me that we could remand yet again for a definitive factual determination of whether appellant, who is competent and understands what a waiver entails, wants to proceed with his appeal or withdraw/waive it. But, given appellant's established track record, I see little prospect that this course would resolve the matter since, before we could review the finding, appellant could change his mind again. Since there is no finding of a valid waiver to review at this point (unlike in *Fahy* ), and since appellant's last *record* expression was to pursue the appeal, I agree with the majority's determination to review the claims presented in this appeal.

I would also note that reaching the claims, rather than remanding, is sensible here because appellant's vacillation already has created an unnecessary and substantial delay in the orderly resolution of this matter. Although it may not have been this appellant's conscious intention, I am mindful that such vacillation could be deliberately employed as a

delaying tactic in capital cases. Any party, including a death-sentenced convict, is free to choose not to pursue collateral review. This Court, however, is not a fact-finding body. When faced with a dispute concerning a request to withdraw, and the knowing, intelligent, and voluntary nature of an expression to waive further review, we must of necessity remand the matter for a factual determination. Continued vacillation by the defendant could create an endless ping-ponging of the matter between the trial and appellate courts.

In capital cases, of course, delay is often an end in itself for the death-sentenced prisoner. As Chief Justice Rehnquist has noted, there are "different litigating incentives facing capital and noncapital defendants." *Lindh v. Murphy,* 521 U.S. 320, 340, 117 S.Ct. 2059, 2070, 138 L.Ed.2d 481 (1997) (Rehnquist, C.J., dissenting).

> Noncapital defendants, serving criminal sentences in prison, file habeas petitions seeking to be released, presumably as soon as possible. They have no incentive to delay.... In contrast, capital defendants, facing impending execution, seek to avoid being executed. Their incentive, therefore, is *to utilize every means possible to delay the carrying out of* their sentence.

*Id.* I would be careful not to create any incentive for a capital defendant to build delay into his appeal. Thus it is that, on this record, I am satisfied to review appellant's claims, notwithstanding his on-again, off-again expressions of disinclination to pursue relief.

SAYLOR, Justice, dissenting.

On June 17, 1999, Appellant submitted a letter to this Court expressing a desire to abandon the present appeal. Accordingly, I would remand to the PCRA court for a determination as to whether Appellant's apparent waiver is knowing, voluntary and intelligent.

Although I would not reach the merits of Appellant's claims at this juncture, I note my disagreement with the majority's approach to the disposition of the issue concerning trial counsel's alleged ineffectiveness in failing to present mitigating

circumstances in the penalty phase of trial. Prior to the penalty phase, Appellant expressed a desire to stipulate to the existence of several aggravating factors and the absence of any mitigating factors, functionally agreeing to a death sentence. *See* 42 Pa.C.S. § 9711(c)(1)(iv)(providing that "the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstances"). Apprehending the gravity of such stipulation, the trial court conducted an on-the-record colloquy, in which Appellant essentially confirmed his understanding of the penalty that would result from his stipulation; indicated that he had been advised concerning the nature of the penalty phase proceeding and the role of aggravating and mitigating circumstances; and maintained that he was nonetheless committed to proceeding on the stipulation. Nevertheless, the trial court, quite appropriately, instructed trial counsel to fully prepare for the penalty phase proceeding as follows:

> Now, you understand that even though you have given those instructions, my instructions to [trial counsel] are going to be to do everything that he can possibly think of to prepare a defense, including further discussions with you. I'm going to direct that he remain in daily contact with you to make sure you haven't changed your mind. I'm going to have him contact your family and your friends and any other witnesses that may possibly be available and to have them subpoenaed and to have them available.

The trial court also secured Appellant's consent to such preparation. Further, at the penalty phase proceeding, upon the actual proffer of the stipulation, the trial court conducted a second colloquy, in which Appellant stated that his decision was voluntary, again acknowledged his understanding concerning the effect of the stipulation, and indicated that he believed that trial counsel was prepared to actually conduct the defense.

The difficulty, however, is that there is no contemporaneous, on-the-record description of trial counsel's actual preparation. Pertaining to the penalty phase of a capital case, I believe

that, even where a client fails to cooperate and opposes the proffer of a defense, counsel retains the obligation to conduct a reasonable investigation. *See Johnston v. Singletary,* 162 F.3d 630, 643 (11th Cir.1998); *Matthews v. Evatt,* 105 F.3d 907, 920 (4th Cir.1997); *Blanco v. Singletary,* 943 F.2d 1477, 1503 (11th Cir.1991). Notwithstanding the client's expressed wishes, lacking proper preparation by trial counsel and an on-the-record articulation of that preparation, there is simply no basis in the trial record from which to assess whether the defendant's decisions were properly informed. *See generally Allen v. State,* 662 So.2d 323, 328–29 (Fla.1995).[1] Holding counsel to such a standard eliminates the risk that a capital defendant, whose advocate cannot frame a colorable defense around concrete facts generated from a reasonable investigation, might decide for that reason alone that there is no hope of avoiding the least favorable outcome.

In the present case, even if trial counsel was not so obligated by our capital jurisprudence, the record discloses that the trial court specifically instructed him to undertake full preparation. Yet, not only is there no contemporaneous record concerning what counsel actually did, upon his examination at the PCRA hearing, trial counsel characterized his preparation as "cursory." Although he was able to identify several witnesses (a close friend and "maybe some of the family members"), trial counsel described the evidence as "very minor" and relied heavily upon Appellant's expressed wishes to excuse his failure to fully prepare:

> Q: [Did your investigation tap] in to other areas of mitigation regarding the family dynamics or any of the abuse issues we had talked about?

---

1. If the defendant absolutely refuses to permit the necessary investigation, counsel should give consideration to seeking permission to withdraw, since he cannot perform an essential function of his representation; at a minimum, the trial court should be informed at the earliest opportunity (since counsel's investigation should obviously begin upon the commencement of the representation, the involvement of the trial court should occur long before the eve of commencement of the penalty phase of trial).

A: Well, certainly it did, and certainly I was aware of that. You have to understand I did a cursory preparation based on the judge's request to do so. [Appellant] was instructing me all along from this point not to. In fact, he did so at the sentencing proceeding.

THE COURT: [D]id you or did you not make a complete preparation to present mitigating circumstances? You referred to cursory. You referred to quick investigation. Did the Court not instruct you to do a complete defense for mitigation? Did you understand that was what you were to do?

A: Yes, Your Honor.

THE COURT: Did you do it?

A: I don't know, Your Honor. Your Honor, I'll tell you what I did do. I talked to these witnesses. I talked to Mr. Michael about who he wanted, what he wanted to present. That's what I did, you know.

Relative to the development of potential mental health mitigation evidence, trial counsel also indicated as follows:

Maybe that's what [the trial court] wanted me to do, but you have to understand Mr. Michael did not want mitigation. But certainly all those that you've raised could have been mitigating factors in a death penalty proceeding.

Counsel proceeded as indicated despite the fact that the trial court had secured Appellant's on-the-record consent to full preparation, and counsel never reported to the trial court that such consent was subsequently withdrawn. It is also significant that post-conviction counsel was able to create a substantial record of mitigating evidence at the PCRA hearing.

On this record, I cannot agree with the majority that the Rule of Professional Conduct pertaining to the general scope of an attorney's representation would apply to obviate review of trial counsel's actual performance as it relates to Appellant's decision to accept the death penalty.