700 A.2d 1256

COMMONWEALTH of Pennsylvania, Appellee,

v.

Henry FAHY, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 3, 1997.

Decided Sept. 17, 1997.

Reargument Denied Dec. 2, 1997.

160

Norris E. Gelman, Billy H. Nolas, Philadelphia, for H. Fahy.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for the Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

CASTILLE, Justice.

The sole issue before this Court is whether appellant's waiver of all collateral or appellate proceedings is valid. We hold that appellant's waiver is valid; therefore the instant appeal is dismissed.

In 1983, a jury convicted appellant of first-degree murder, rape, burglary and possession of an instrument of crime as a result of his rape, torture and murder of a neighbor's twelve-

year-old daughter. He was sentenced to death and on direct appeal in 1986, this Court affirmed his sentence of death. *Commonwealth v. Fahy,* 512 Pa. 298, 516 A.2d 689 (1986).

In 1986, appellant filed a PCRA petition which was dismissed in 1987 because no action was taken on the petition. Five years later, the Governor of the Commonwealth issued a warrant of execution, and appellant was scheduled to be put to death on January 14, 1992. Approximately one week before the scheduled execution, appellant, represented by court appointed counsel, Norris Gelman, Esq. and Louis M. Natali, Esq., sought a stay of execution from the Court of Common Pleas on the grounds that, before his execution, appellant should be allowed to argue the issue of whether his trial counsel was ineffective for failing to challenge the aggravating circumstance of torture. The trial court denied the stay, and appellant filed a stay request in both this Court and in the Federal District Court. On January 13, 1992, this Court remanded the matter to the trial court for a PCRA hearing on the torture issue. On September 14, 1992, the trial court held a PCRA hearing and denied relief to appellant. This Court affirmed on July 1, 1994. *Commonwealth v. Fahy,* 537 Pa. 533, 645 A.2d 199 (1994). The United States Supreme Court denied appellant's petition for certiorari on January 9, 1995.

On May 19, 1995, the Governor signed another death warrant after which appellant again filed stay requests in the common pleas court, this Court and the Federal District Court. On June 1, 1995, appellant filed a motion requesting additional time to file a PCRA petition. On July 7, 1995, this Court granted a stay of execution and allowed appellant thirty days to file yet another PCRA petition. Appellant filed his third petition on August 4, 1995 and supplemented it on September 12, 1995 claiming that he suffered from a mental illness that should have been deemed a mitigating factor in the penalty phase and that there should have been a competency hearing before the penalty phase. Following an evidentiary hearing, on October 25, 1995, the PCRA court denied the PCRA petition, and appellant appealed to this Court.

While his appeal before this Court was pending, on December 5, 1995, appellant himself filed a handwritten petition asking the PCRA court to allow him to waive all collateral proceedings and to withdraw any appeals so that his sentence could be carried out. On March 22, 1996, attorneys Gelman and Natali filed a motion requesting that the PCRA court determine appellant's competency to waive his rights, arguing that public interest requires a psychiatric evaluation whenever a defendant decides to waive his collateral and appellate rights in a capital case. On July 17, 1996, this Court remanded to the PCRA court "for a colloquy to determine whether petitioner fully understands the consequences of his request to withdraw his appeal and to waive all collateral proceedings."

On August 2, 1996, appellant appeared for the colloquy and requested an additional week and a transfer to Graterford prison during that week to consider his decision. The court granted appellant's requests. One week later, on August 9, 1996, appellant again appeared before the PCRA court for the waiver colloquy. The hearing began with the judge questioning appellant about whether he had an opportunity to speak to the attorneys from the Center for Legal Education, Advocacy & Defense Assistance ("CLEADA") during his week at Graterford. Appellant responded that he spoke to them on three separate days and again on the morning of August 9, 1996. Appellant stated that the last time the attorneys from CLEADA came to Graterford he signed papers stating that he wanted them to represent him. He then stated that he had changed his mind and did not want to be represented by the attorneys from CLEADA.

Appellant Fahy told the court that he knew that the attorneys "mean well" but that he did not want any further appeals:

I just don't want you to file any more petitions for me. When I leave here, don't ask the Court to reconsider, the Supreme Court. I know what I'm doing. I don't need to be brought down here on some petition as Mr. Gelman put the remand in for my Petition that I filed on December 5th which is marked as Exhibit C–1. I don't need some action

put on that. I know what I want. If I hadn't known what I want I never would have filed a Petition. It just got to the point and that time that this is it. It's been since 1981, I have been on death row since 1983.

Forgive me. I know you all mean well. It's just I think your energy could be well spent on someone who is, who is ready to receive it. There is no use in giving it to me when I don't want it. Not at this time. It's over.

Notes of Testimony, August 9, 1996 ("N.T."), p. 11.

At one point in the hearing, one of the attorneys suggested that appellant was becoming emotional due to questions about the conditions of his incarceration. The judge questioned appellant regarding whether he was emotional and why. Appellant responded:

[APPELLANT]: If you are saying was I somewhat emotional, but it is not the questions that is making me emotional.

THE COURT: What is it?

[APPELLANT]: I got to the point that now I want to do something and I asked you as Counsel, I asked Billy [1], I said please don't do this. And you're doing exactly what I asked you not to do. I mean you think I'm not capable of, of determining myself and my being?

N.T., p. 29.

At the conclusion of the first quoted passage above, the court stated: "All right, Mr. Fahy, I will inform the Supreme Court of Pennsylvania that you were knowingly waiving all your appellate rights and all your PCRA rights." N.T., p. 12. Later the court reiterated:

I am making the decision he's fully competent, he knows what he's doing. He knows the conditions where he is. He finally wants to bring this to an end and he doesn't want lawyers like you to keep fighting where he is going to have to stay where he is.

1. Indicating Billy Nolas, Esq., an attorney employed by CLEADA.

N.T., p. 25. Thus, at the August 9, 1996 hearing, the court found that appellant was competent and was knowingly waiving all rights to further collateral and appellate review.

Subsequently, on October 23, 1996, the PCRA court denied Gelman and Natali's March 1996 motion for remand to the PCRA court to determine appellant's competency to waive all appellate proceedings. Appellant's counsel from CLEADA then filed the instant appeal alleging that, notwithstanding appellant's letter and testimony, appellant actually did not waive his rights to collateral and appellate review. Counsel relies upon a declaration of counsel dated after the colloquy hearing containing a number of purported "facts"[2] about the waiver colloquy hearing which are not supported by the transcript of that hearing and upon a declaration of appellant purportedly signed by him on August 21, 1996, twelve days after the waiver colloquy.

In conducting a waiver colloquy, a trial court must determine that the defendant knowingly and voluntarily waived his rights. *See, Commonwealth v. Michael,* 544 Pa. 105, 108, 674 A.2d 1044, 1045 (1996). The defendant in *Michael* waived his right to a trial and pleaded guilty to first degree murder and kidnaping. Before accepting the guilty plea, the trial court conducted an extensive colloquy to determine if the waiver was knowing and voluntary. The court questioned the defendant in order to determine:

[T]hat he had discussed the matter carefully with his attorney, that he understood the charges against him including the charge of first degree murder, his right to a jury trial or bench trial, the presumption of innocence, the Commonwealth's burden of proof, the right to confront the Commonwealth's witnesses, his waiver of those rights, his limited rights upon pleading guilty, the voluntariness of his plea, the elements of first degree murder, that the penalty for

2. These "facts" include counsel's assertion that appellant's decision to waive further appellate and collateral review was motivated by the conditions of his incarceration and counsel's claim that questions relating to those conditions caused appellant to cry on the stand. As is clear from the passage quoted above, this is not an accurate interpretation of what occurred at the waiver hearing.

first degree murder is either life imprisonment or death which would be determined at a separate hearing, that his rights at the sentencing hearing including the right to present any mitigating circumstances, and that he was satisfied with counsel.

*Id.* at 108 n. 2, 674 A.2d at 1045 n. 2.

At the sentencing phase, the defendant in *Michael* stipulated to the aggravating circumstances and waived his right to present any mitigating circumstances. The trial court again conducted an extensive colloquy to determine whether petitioner understood that, if he entered into the stipulation and waived his right to present mitigation evidence, the death penalty would be imposed. The court asked if he understood that he had a right to have a jury impose sentence and that a jury might sentence him to life imprisonment. This Court held that under the facts in *Michael* the trial court appropriately accepted the defendant's waivers.

In the instant case, the trial court conducted a colloquy lasting more than an hour during which appellant clearly and unambiguously stated that he wished to waive his right to all further appeals and that he wanted his sentence carried out as soon as possible. He stated that he understood that his sentence likely would be carried out if he waived his appellate rights. He also repeatedly stated that he wanted his attorneys not to file any further appeals or petitions on his behalf. As a result of the colloquy, the court accepted appellant's waiver. A review of the transcript of the colloquy hearing in this matter reveals that the trial court conducted an adequate waiver colloquy before accepting appellant's waiver as being made knowingly and voluntarily.

There is literally nothing in the record to support counsel's representation that appellant did not knowingly and voluntarily waive his appellate rights. In addition, there is no indication that the CLEADA attorneys have authority to file the instant brief. Further, no "next friend" issue has been raised by counsel to date, and counsel has produced no expert psychiatric testimony to support the contention that appellant

is not competent to waive further appellate and collateral review. Under the circumstances, we find appellant's waiver is valid. Because appellant's waiver is valid and because it appears that counsel are acting without appellant's authority in the instant matter, the appeal is dismissed.[3]

---

3. The Prothonotary is hereby directed to transmit to the Governor's Office the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court of Pennsylvania pursuant to 42 Pa.C.S. § 9711(i).