810 A.2d 1197

COMMONWEALTH of Pennsylvania, Appellee,

v.

Daniel M. SARANCHAK, Appellant.

Supreme Court of Pennsylvania.

Submitted on Briefs July 9, 2001.

Decided Nov. 22, 2002.

Stuart Brian Lev, Alexandra B. Fensterer, for Daniel Saranchak.

Robert A. Graci, Claude A. Lord Shields, for Commonwealth of Pennsylvania.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice SAYLOR.

This matter arises out of a capital, post-conviction petitioner's court-approved waiver of counsel and withdrawal of state post-conviction relief proceedings, and his subsequent retraction.

On October 15, 1993, Donald M. Saranchak robbed, shot, and killed his uncle and grandmother. He pled guilty to murder generally and was sentenced to death based upon aggravating circumstances involving the commission of the murders during the perpetration of a felony and the convictions of multiple murders. The judgment of sentence was affirmed on direct appeal. *See Commonwealth v. Saranchak,* 544 Pa. 158, 675 A.2d 268 (1996). Saranchak subsequently sought relief pursuant to the Post Conviction Relief Act, 42

Pa.C.S. §§ 9541–9546 (the "PCRA"), which was denied by the PCRA court. On appeal, however, this Court issued a *per curiam* Order remanding for the appointment of new counsel and the filing of a new PCRA petition. After the Defender Association of Philadelphia was appointed as substitute counsel, it proceeded to file the petition and pursue post-conviction review.

Pending hearing on this petition, however, Saranchak submitted a letter to the PCRA court indicating that he wished to discharge his attorneys and forego further legal proceedings. The PCRA court conducted a colloquy on July 31, 2000, at which time Saranchak confirmed that he understood the nature of the capital proceedings, his entitlement to counsel, and his rights under the PCRA, but nevertheless maintained his wish to waive such rights. The PCRA court expressed satisfaction that Saranchak's waiver was knowing, voluntary, and intelligent; accordingly, it removed the Defender Association as counsel and dismissed the post-conviction petition.

The Defender Association filed a notice of appeal challenging the PCRA court's order, together with a motion seeking a stay of execution (which was then scheduled for November 8, 2000), pending appellate review of the waiver determination. By Order dated October 25, 2000, this Court held the matter in abeyance pending supplementation of the record with expert, psychiatric opinion concerning Saranchak's competency to effectuate a knowing, voluntary, and intelligent waiver of his right to counsel and to pursue further collateral proceedings. Subsequently, the Commonwealth filed a copy of the report of Larry A. Rotenberg, M.D., Director of Psychiatry at the Reading Hospital and Medical Center, containing the opinion that Saranchak had the ability to effectuate an appropriate waiver.[1] The PCRA court conducted a hearing, at which Dr. Rotenberg's report was admitted into evidence, and the psychiatrist testified to his findings and was subject to

---

1. The report indicated that such opinion was based upon psychiatric interviews with Saranchak, the administration of a battery of psychological tests, and a review of background documents provided by the district attorney and the Defender Association, including psychological records and notes of testimony.

cross-examination. On the basis of the supplemental record provided, this Court concluded that the PCRA court had made sustainable legal findings supporting its order approving the discharge of the Defender Association as Saranchak's counsel and the withdrawal of his post-conviction petition. Accordingly, by Order dated November 6, 2000, the Court denied the motion for stay of execution and dismissed the Defender Association's appeal based on lack of standing.

On November 7, 2000, the Defender Association filed a next-friend petition seeking a stay of execution in the United States District Court for the Middle District of Pennsylvania. Although the district court denied relief following a hearing, the United States Court of Appeals for the Third Circuit issued the requested stay on the Defender Association's subsequent application. The Commonwealth immediately sought relief from the stay in the United States Supreme Court.

While the Commonwealth's application was pending, the Defender Association filed a second motion for stay of execution in this Court. In addition to reporting the entry of a stay by the Third Circuit, the Defender Association indicated, for the first time, that Saranchak had expressed a willingness to accept a stay and permit next-friend representation of his rights and interests. Such application, however, was withdrawn after the United States Supreme Court declined to vacate the stay implemented by the Third Circuit.

On November 20, 2000, Saranchak applied for reconsideration of this Court's November 6, 2000 order, attaching to his application a statement reflecting his desire to retract his waivers, to exercise his right to challenge his convictions and sentences through any appropriate legal means, and to be represented in this effort by the Defender Association. On February 7, 2001, this Court issued an Order directing that the PCRA court conduct a colloquy to determine the veracity of the statement and to assess Saranchak's intentions. Mr. Justice Castille filed a dissenting statement, in which he observed, *inter alia*, that the procedural rule governing allowance of reargument does not contemplate a change of mind following waiver as a basis for reconsideration. *See Common-*

*wealth v. Saranchak,* 564 Pa. 250, 251–60, 767 A.2d 541, 543–46 (2001) (Castille, J., dissenting) (citing Pa.R.A.P. 2543). The colloquy proceeded, and the transcript confirmed the veracity of the signed statement and independently reflected that Saranchak wished to pursue post-conviction relief and for the Defender Association to represent him. Therefore, this Court is now presented with the question of whether Saranchak's reversal prior to termination of the appeal proceedings commenced by the Defender Association constitutes a ground upon which the post-conviction proceedings may be reinstated.

■ Saranchak's argument is that, due to the graveness of the punishment of death, a capital petitioner's most recent expression of his wishes in relation to the pursuit of post-conviction relief should control. The Commonwealth emphasizes the validity of Saranchak's waiver in the PCRA court, as previously confirmed by this Court, contending that we should look no further. In this regard, the Commonwealth asserts that reinstatement relief is beyond the standards governing reargument and predicts that its affordance in this case would subject appellate jurisprudence to the will or caprice of appellants.

■ Most jurisdictions permit a capital defendant to waive direct appellate review and/or post-conviction proceedings, and Pennsylvania is no exception. *See, e.g., Commonwealth v. Bronshtein,* 556 Pa. 545, 554, 729 A.2d 1102, 1106 (1999) (upholding the validity of a knowing, intelligent, and voluntary waiver of a capital prisoner's right to pursue post-conviction remedies). *But see State v. Martini,* 144 N.J. 603, 677 A.2d 1106, 1112 (1996) (determining that, due to the court's independent duty to ensure the integrity of death sentences, a capital defendant may not waive post-conviction review as to certain issues). Further, we acknowledge the Commonwealth's respectable view regarding the procedure for reargument which is supported in the text of Rule of Appellate Procedure 2543.

Nevertheless, this Court previously has not squarely addressed the question presented here in the capital arena,[2] in which concerns for reliability are foremost. *See Johnson v. Mississippi,* 486 U.S. 578, 584, 108 S.Ct. 1981, 1986, 100 L.Ed.2d 575 (1988) ("The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." (citations omitted)). Moreover, we have recognized the increasing legislative constraints on post-conviction review, including its effective limitation to proceedings on a single, counseled petition. *See generally Williams,* 566 Pa. at 565, 782 A.2d at 524. In light of the subject matter, considering the existing restraints on serial petitions, given that the General Assembly has not spoken to the present situation, and recognizing the guiding preference for merits review in capital cases, we believe that the better course lies with the reinstatement alternative. *Accord Smith v. Armontrout,* 865 F.2d 1515, 1516–17 (8th Cir.1988); *cf. St. Pierre v. Cowan,* 217 F.3d 939, 948–50 (7th Cir.2000). Further, in this unique situation, we will not invoke standing principles on account of the Defender Association's involvement as the ostensible, initial appellant to defeat the present

---

**2.** We do not deem *Commonwealth v. Fahy,* 549 Pa. 159, 700 A.2d 1256 (1997), controlling, as the post-conviction petition under review there was a third one, whereas the present petition is effectively a first; Saranchak's petition was filed prior to the implementation of an effective bar to serial PCRA petitions arising out of the 1995 amendments to the PCRA, *see generally Commonwealth v. Williams,* 566 Pa. 553, 564–65, 782 A.2d 517, 523–24 (2001), and the Court in *Fahy* did not undertake to assess the effect of such amendments; *Fahy's* substantive analysis gave no explicit account for the fact of a post-waiver retraction, other than to suggest that it was not a matter of record; and in this case we have before us a record of Saranchak's retraction which apparently occurred after the filing of the present appeal. Therefore, whereas in *Fahy* the Court expressly tied its holding to the "appear[ance] that counsel are acting without [the] appellant's authority," *Fahy,* 549 Pa. at 166, 700 A.2d at 1260, in this case it is a matter of record that Saranchak's counsel are presently acting with his authority. Further, in response to the dissent's points concerning *Fahy,* it is neither an uncommon nor untoward practice for a case to be effectively limited to its facts upon subsequent consideration of underlying questions in a new set of circumstances.

effort to obtain merits review of Saranchak's post-conviction claims. *Cf. Smith,* 865 F.2d at 1516–17.[3]

The post-conviction petition is reinstated and the matter remanded for resolution in accordance with the applicable law and rules.

Justice CAPPY files a concurring opinion.

Justice CASTILLE files a dissenting opinion in which Mr. Justice Eakin joins.

Justice CAPPY, concurring.

Although I find myself attracted to the sound jurisprudential argument set forth by the learned author of the dissent, I am constrained to acknowledge the pragmatic view offered by the majority in recognizing that a sentence of death is different.

Accordingly, I join only in the result offered by the majority opinion.

Justice CASTILLE, dissenting.

The Court today grants the petition of the Federal Court Division of the Defender Association of Philadelphia ("Federal Defender") for reargument of this Court's unanimous order dismissing, on grounds that the Federal Defender lacked standing, its vicarious appeal of the order of the PCRA court dismissing Daniel Saranchak's PCRA petition following his record waiver of both counsel and collateral review. The Court then employs the Federal Defender's improper vicarious appeal as a basis to reinstate Saranchak's PCRA petition—even though Saranchak, who was ruled competent, never appealed its dismissal—on the basis that, after the Federal Court granted him a stay of execution, Saranchak "changed his mind" about the Federal Defender representing him, and also about pursuing post-conviction relief. I believe that

3. We acknowledge the Commonwealth's concern that a capital petitioner might utilize multiple waivers and retractions tactically and reserve decision concerning the proper judicial response to such behavior for a case in which this is attempted.

principles of jurisdiction, of separation of powers, of finality, and of *stare decisis,* as well as the standards governing next friend litigation and reargument petitions, apply to capital cases on collateral review. Accordingly, I must respectfully dissent.

The majority explains its novel holding by offering that "this Court has not previously addressed the question presented here in the capital arena, in which concerns for reliability are foremost." Op. at 1199–1200 (footnote omitted). "In light of the subject matter," the majority continues, "considering the existing restraints on serial petitions, given that the General Assembly has not spoken to the present situation, and recognizing the guiding preference for merits review in capital cases, we believe that the better course lies with the reinstatement alternative." *Id.* (citations omitted). The majority does not identify the source in our jurisprudence for its "reinstatement alternative." It is simply judicial fiat. In other words, the majority essentially reasons that, because this is a capital case, the normal laws and principles that would unquestionably require dismissal of the Federal Defender's reargument petition in any other context should not apply here. While "death is different," it is not so different that the Court should freely adopt any course it chooses.

I note that there are philosophical reasons to question the notion that death should be deemed categorically different from other criminal sentences. *See generally* Note, *The Rhetoric of Difference and the Legitimacy of Capital Punishment,* 114 Harv. L.Rev. 1599, 1619 (2001) (arguing that two reasons most often cited for death's distinctiveness, "severity" and "finality" of death sentence, are highly questionable, not because death is not severe and final, but because most other punishments are also). Leaving philosophy aside, there is no question that capital cases are in fact treated differently than other criminal matters in this Commonwealth in a number of important respects. There are differences at trial. Jury selection, for one, generally involves a far more probing analysis of the jurors' views. There are also differences on appeal. One example is that the General Assembly has deter-

mined that this Court is statutorily obliged to review every sentence of death on direct appeal. We are also directed by the General Assembly to vacate the sentence if we find that it was the product of passion, prejudice, or any other arbitrary factor, or if the evidence fails to support the finding of at least one aggravating circumstance. 42 Pa.C.S. § 9711(h). We engage in this review even if the defendant raises no issue. The Court, by its own self-imposed duty, reviews the sufficiency of the evidence underlying the first-degree murder conviction in capital cases, *see Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), and we have adopted a practice of relaxing our normal waiver principles in capital direct appeals, *see id.* at 942 n. 3. Furthermore, this Court conducts an independent review of these required issues on a direct appeal even if the defendant does not wish to participate. *See, e.g., Commonwealth v. Graham*, 541 Pa. 173, 661 A.2d 1367 (1995); *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687 (1991).

Death is also different at the PCRA level. For example, capital PCRA appeals, like capital direct appeals, are taken directly to this Court. In addition, there are certain provisions of the PCRA and our rules which specifically govern capital cases.[1]

Death is also different in more subtle, psychological ways affecting everyone along the way. The fact of a capital trial, and the delays inherent in capital cases often prove extremely trying to the victim's family. The severity of the prospective penalty also may take a toll upon the defendant's family, as well as upon prospective jurors, witnesses, prosecutors, defense attorneys, and judges. The very nature of the finality and severity of the penalty forces many to come to terms with an issue that touches upon deeply held religious, moral, and political beliefs.

1. The General Assembly also attempted to treat death entirely differently for purposes of collateral review; to that end, it enacted the Capital Unitary Review Act (CURA), 42 Pa.C.S. § 9570–9579. By order dated August 11, 1997, however, this Court suspended CURA, as well as certain portions of the PCRA which referred to CURA.

But the fact that death is different is not alone a justification for departure from ordered principles of jurisprudence. On issues of jurisdiction, entitlement to reargument, vicarious litigation, separation of powers, and *stare decisis* there is no valid distinction between capital and non-capital appellants. Indeed, contrary to the majority's suggestion that this Court has not previously addressed this issue, this Court denied a virtually identical reargument petition in the capital case of *Commonwealth v. Fahy*, 549 Pa. 159, 700 A.2d 1256 (1997) ("*Fahy I*"). In that case, we determined that the mere fact that Fahy may have changed his mind about pursuing post-conviction relief did not constitute a legitimate ground for revisiting this Court's decision affirming his prior valid waiver of further review. In addition, this Court has repeatedly denied relief in capital matters where, as here, the competent capital defendant himself waived review and failed to appeal the determination below, and a non-party sought to vicariously litigate the appeal for him. *See Commonwealth v. White*, 557 Pa. 408, 734 A.2d 374, 376 (1999); *Commonwealth v. Bronshtein*, 556 Pa. 545, 729 A.2d 1102, 1106 (1999). The "death is different" concerns which obviously power the majority's decision here were certainly no less pressing in these previous capital appeals.

To fully understand the remarkable result and departure from *stare decisis* innovated here, it is necessary to recount the relevant procedural history of this matter. While Saranchak's PCRA petition was pending in the PCRA court, he indicated, in a letter dated July 29, 1999, that he wished to discharge the Federal Defender as counsel and forego all further legal proceedings. He wrote that he had had sufficient time to ponder the magnitude of his crimes and that he was in agreement with the sentence of death. Saranchak further stated that his counsel's filings were not on his behalf and were without his consent. At a subsequent hearing on July 31, 2000, the PCRA court conducted a colloquy during which Saranchak reiterated his desire to waive both counsel and all further review. The PCRA court concluded that Saranchak's waiver of counsel and further review was know-

ing, voluntary and intelligent. Accordingly, it acceded to Saranchak's wishes and removed the Federal Defender as counsel and dismissed the PCRA petition. **Saranchak did not appeal this decision.** Thus, as to Saranchak, the PCRA court's order became final thirty days later, *i.e.,* on August 30, 2000. The Federal Defender, however, in contravention of Saranchak's record wishes, filed its own notice of appeal with this Court, attempting to challenge the PCRA court's order. The Federal Defender's vicarious appeal was improperly filed in Saranchak's name, thus explaining the misleading caption here. The Federal Defender essentially assumed that it was entitled to next friend status, despite the PCRA court's finding that Saranchak was competent.

On October 3, 2000—over a month after Saranchak allowed his PCRA dismissal to become final—the Governor signed a warrant of execution, scheduling Saranchak's execution for November 8, 2000. On October 17, 2000, the Federal Defender filed an emergency motion with this Court seeking a stay of its former client's execution pending its attempted vicarious appeal of the PCRA court's ruling. In its stay motion, the Federal Defender claimed that the PCRA hearing testimony of Dr. Robert Fox, Jr., a psychiatrist who had previously examined Saranchak in October of 1997, cast doubt on the PCRA court's finding that Saranchak was competent to waive counsel and collateral review. Where there is any question concerning a death-sentenced inmate's competency, the Federal Defender contended, due process requires a contemporaneous psychiatric evaluation.

On October 25, 2000, this Court promptly remanded the case for supplementation of the record with expert psychiatric opinion as to Saranchak's ability to effectuate a valid waiver of his right to counsel and to pursue further collateral proceedings. Promptly thereafter, Dr. Larry A. Rotenberg, a court-appointed psychiatrist, examined Saranchak, filed a report, and testified at a supplemental waiver hearing held on November 3, 2000, that, in his opinion, Saranchak was competent to waive his right to counsel and to pursue collateral proceedings. The PCRA court accepted the testimony, noting that it sup-

ported the court's earlier determination that Saranchak's waivers were valid.

Thereafter, this Court, by order dated November 6, 2000, **unanimously** denied the Federal Defender's vicarious, would-be next friend appeal based upon a lack of standing. In a separate order dated the same day, the Court also denied the Federal Defender's emergency motion for a stay of execution. Our order dismissing the Federal Defender's appeal resulted from our finding that Dr. Rotenberg's report and testimony confirmed the PCRA court's previous assessment of Saranchak's competency and, thus, the Federal Defender lacked standing to pursue an appeal on his behalf. The order also necessarily encompassed a rejection of the Federal Defender's various procedural challenges to the supplemental waiver proceedings.

Following this Court's November 6, 2000 orders, then, there was no pending appeal of the July 31, 2000 order discharging Saranchak's counsel and dismissing his PCRA petition: Saranchak himself had **never** brought one, and the vicarious appeal of the Federal Defender had been dismissed because this Court had held that the Federal Defender could not pursue an appeal against its competent former client's wishes. Saranchak's remedies having been exhausted, this Court was willing to let justice be done and the warrant of execution carried out on November 8, 2000. Review in the state courts of Pennsylvania was at an end. Neither Saranchak nor the Federal Defender sought reargument in this Court prior to the scheduled date of execution.

Saranchak was not executed, however. On November 7, 2000, a "next friend" request for a stay of execution was filed on Saranchak's behalf in the United States District Court for the Middle District of Pennsylvania. The District Court, per the Honorable Sylvia H. Rambo, denied the request on the basis that the putative "next friends"—Alexandra Fensterer, Esquire, an attorney with the Federal Defender, and Dennis Troup, Saranchak's step-father—lacked standing to seek a stay of execution. A Third Circuit panel, however, granted a stay and listed the matter for expedited briefing, specifically

directing the parties to brief the standing issue. The Third Circuit did not explain its reasoning. The United States Supreme Court denied the Commonwealth's application to vacate the stay, and Saranchak's warrant of execution expired.

It was only after a stay was granted in federal court that the Federal Defender filed the instant application for reargument with this Court on November 20, 2000, urging this Court to "revisit" our unanimous November 6 order holding that the Federal Defender's vicarious appeal had to be dismissed because it lacked standing to appeal on behalf of a former client. The Federal Defender did not allege any error in this Court's **resolution** of the issues for which they sought reargument. Instead, the claim simply was that, the Third Circuit having thwarted his previously stated, on-the-record, competent desire to see his lawful sentence executed, Saranchak had now changed his mind about pursuing post-conviction relief. Attached to the reargument application was an unsworn declaration by Saranchak dated November 16, 2000, indicating his desire to reinstate his post-conviction proceedings. The Federal Defender's application relied exclusively on the U.S. Supreme Court's decision in *Lonchar v. Thomas*, 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), for its claim that a change of mind automatically warrants the reopening of collateral proceedings. Despite the fact that the reargument petition alleged no error in this Court's unquestionably proper resolution of the Federal Defender's vicarious appeal, the Court, over the lone dissent of this Justice, ordered the PCRA court to conduct a colloquy with Saranchak to determine his "present intentions" with regard to the pursuit of post-conviction relief and the reinstatement of the Federal Defender as his counsel. *Commonwealth v. Saranchak*, 564 Pa. 250, 767 A.2d 541 (2001).

A hearing was subsequently held in the PCRA court on March 29, 2001. Saranchak testified that he now wished to have the Federal Defender reinstated as his counsel. *See* N.T. 3/29/2001 at 10. In addition, he expressed a new, albeit grudging willingness to pursue state post-conviction relief, but only because his real aim was to secure federal habeas review:

I want the feds to look at the case. They are the ones that gave me the stay of execution. They are the ones that I want to see take the case.

\* \* \*

I'm not sure exactly how the process goes. I'm saying I'm not sure what has to be done in order to get to the feds, but if it has to go through the lower courts to the feds, that's what the attorneys are there for.

*Id.* at 13–14. Saranchak testified that he was competent at the time of his previous waivers. *See* N.T. 3/29/2001 at 12–13. In light of the PCRA court's colloquy with Saranchak, this Court directed the Commonwealth and the Federal Defender to submit briefs regarding whether Saranchak's PCRA petition should be reinstated.

This Court could fully grant Saranchak's record desire to proceed to federal review simply by denying the Federal Defender's reargument petition. Since Saranchak unquestionably was and is competent to make decisions, the Federal Defender's vicarious appeal remains improper. Meanwhile, Saranchak himself **never** appealed the PCRA dismissal and, as the Commonwealth noted in its response to the Application for Reargument, the thirty day **jurisdictional** appeal period "has long since expired." Since there is not, and never was, a valid appeal before this Court from Saranchak himself or a legitimate next friend, the PCRA dismissal is final.

Nevertheless, today, over two years after this Court unanimously dismissed the Federal Defender's vicarious appeal, and after this Court would have permitted Saranchak to be executed, the Court employs that vicarious appeal as if it were a valid vehicle to reinstate the PCRA petition. Notably, the Court does not actually grant reargument, nor does it even vacate our prior order dismissing the Federal Defender's appeal. Instead, the Court simply orders reinstatement of Saranchak's PCRA petition as if we had the inherent authority to do so. To accomplish that end, the majority implicitly indulges the fiction—contradicted by the record and our previous order—that the Federal Defender's vicarious appeal was

actually Saranchak's. After assuming that Saranchak can step into the shoes of the Federal Defender, which erroneously attempted to step into the competent Saranchak's shoes, the majority notes that the transcript of the PCRA court's most recent colloquy with Saranchak confirms the veracity of the declaration attached to the Federal Defender's reargument petition and independently reflects that he **now** wishes to pursue post-conviction relief and that he wants the Federal Defender to represent him. "Therefore," the majority reasons, it "is now presented with the question of whether Saranchak's reversal prior to termination of the appeals proceedings commenced by the [Federal Defender] constitutes a ground upon which the post-conviction proceedings may be reinstated." Op. at 1199. The Court acknowledges that Pennsylvania, like most jurisdictions, permits a capital defendant to waive post-conviction proceedings. The Court also acknowledges the "respectable" view of the Commonwealth—in fact, it is an indisputably **correct** view, see *Saranchak,* 767 A.2d at 543–45 (Castille, J., dissenting)—that Saranchak's change of mind following this Court's affirmance of his record waiver is not an appropriate basis for reargument of the Federal Defender's dismissed appeal. Nevertheless, the majority opinion summarily concludes that "the better course lies with the reinstatement alternative." Op. at 1200.

There is not an atom of authority in support of what the Court does today: it is a sheer indulgence of power. The Federal Defender does not argue, and the Court does not find, that the order dismissing its appeal was erroneous in any way. The Federal Defender does not question this Court's determination that Saranchak was mentally competent at the time of his record PCRA waiver and that his waiver was knowingly, voluntarily and intelligently made. It also is not contested that at the time of this Court's challenged order, Saranchak's desire remained to see his execution carried out two days later. The fact that it was putative next friends, and not Saranchak himself, who secured the federal stay fully corroborated this. The claim is simply that Saranchak belatedly changed his mind—and apparently **only** because of the federal

stay—and, thus, his PCRA petition should be reinstated even though he never appealed the dismissal order and the Federal Defender had no standing to appeal it on his behalf.

The fact that Saranchak has now changed his mind about pursuing collateral relief after the federal court issued a stay is not a "compelling reason" for reargument of the Federal Defender's improper next friend appeal. Saranchak's *ex post facto* change of mind based upon what the federal court did in no way calls into question the accuracy of the determination that he competently waived counsel and further review and, thus, the Federal Defender's appeal was improper.

Indeed, the most recent colloquy with Saranchak confirms the propriety of this Court's prior determination that he was mentally competent when he waived counsel and further review and that his waiver was knowing, voluntary and intelligent. Saranchak testified and reaffirmed that his letter to the PCRA court requesting that his counsel be removed and his post-conviction proceedings terminated accurately reflected his then-intention to see his execution promptly carried out. *See* N.T. 3/29/2001 at 12. He further testified that he was competent at the time he made that decision. *See id.* at 12–13. Saranchak candidly acknowledged that his current desire to pursue PCRA relief constitutes a simple change of mind. *See id.* at 13. This fact establishes that the Federal Defender's appeal was properly dismissed and, since the competent Saranchak himself never appealed, the PCRA dismissal is final. This Court has no jurisdiction at this late date to "reinstate" a PCRA petition that was dismissed **and never appealed by Saranchak** over two years ago.

It is bad enough that the Court ignores our lack of jurisdiction. But what is worse is that its decision is contrary to the unanimous opinion in *Commonwealth v. Fahy*, 549 Pa. 159, 700 A.2d 1256 (1997) ("*Fahy I*"). Unlike Saranchak, Fahy actually appealed the denial of his PCRA petition (his third). While the appeal was pending in this Court, however, Fahy filed a handwritten petition asking the PCRA court to allow him to waive all collateral proceedings and to withdraw any appeals so that his sentence could be carried out. This Court

remanded Fahy's appeal to the PCRA court, which conducted a colloquy and found that Fahy was competent and had knowingly waived his rights to further review. Although Fahy had also testified that he did not want his appointed counsel or former counsel, the Center for Legal Education, Advocacy & Defense Assistance ("CLEADA"), to pursue the matter further, CLEADA—like the Federal Defender here— filed its own appeal with this Court. CLEADA alleged that, notwithstanding Fahy's letter and testimony, he actually did not waive his right to collateral review. In support of this claim, CLEADA filed with the Court a non-record declaration of Fahy purportedly signed by him twelve days after the waiver colloquy, stating that he did not intend to waive his post-conviction rights. This Court unanimously affirmed the waiver determination, without even remanding for a hearing, noting that there was nothing in the record to support CLEADA's representation that the previous waiver was not knowing and voluntary. Because the waiver was valid and because it appeared that counsel was acting without Fahy's consent, CLEADA's appeal was dismissed. *Id.* at 1259–60.

Thereafter, CLEADA sought reargument and attached to its reargument application another non-record, unsworn verification purportedly signed by Fahy again stating his desire to litigate his case, and his wish to have CLEADA represent him. Like the Federal Defender here, CLEADA also cited *Lonchar* for the proposition that once a post-conviction petitioner changes his mind about waiver, his current wishes control as a federal constitutional matter. This Court unanimously denied the reargument petition. We did so because Fahy's non-record verification contained no new information which would lead the Court to conclude that Fahy's statements under oath at the waiver colloquy were not knowingly and voluntarily made and that, even if the verification were considered, it would amount to nothing more than evidence that appellant changed his mind about waiving his post-conviction rights. In denying relief, the Court also necessarily found that *Lonchar* was not precedent for the argument that a waiver is valid only until there is a change of mind.

The majority states that *Fahy I* is not controlling here because "the post-conviction petition under review there was filed prior to the implementation of an effective bar to serial PCRA petitions arising out of the 1995 amendments to the PCRA." Op. at 1199 n. 2. In addition, the majority asserts that this matter is distinguishable on the basis that "in this case we have before us a record of Saranchak's retraction which apparently occurred after the filing of the present appeal." *Id.* Regarding the first point, I fail to see the relevance of the fact that Fahy filed his third PCRA petition before the 1995 amendments to the PCRA. If the majority means to suggest that this Court's denial of reargument in *Fahy I* was predicated on Fahy's ability to file a subsequent PCRA petition, this contention is demonstrably erroneous. It was quite clear at the time this Court unanimously denied CLEADA's reargument petition that any subsequent PCRA petition filed by Fahy or on his behalf would be subject to the PCRA's timeliness and serial petition restrictions. Indeed, Fahy's fourth PCRA petition was, in fact, dismissed as untimely. *See Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 224–25 (1999) (*Fahy II* ).

The majority's tautological assertion that *Fahy I* is inapposite because Saranchak's after-the-fact "retraction" of his prior, valid waivers appears in the record is equally erroneous.[2] Saranchak's *ex post facto* change of mind appears in the record only because this Court, after we had unanimously rejected the Federal Defender's improper vicarious appeal, acted contrary to *Fahy I* by ordering the PCRA court to conduct a colloquy with Saranchak. Again, a virtually identical declaration was included with CLEADA's reargument petition in *Fahy I.* There, however, the Court unanimously concluded that this non-record declaration did not in any way cast doubt upon the validity of Fahy's prior record waiver of post-conviction review and that further action by the Court was thus unwarranted.

2. As has been demonstrated above, Saranchak never **retracted** his previous waivers; he simply changed his mind.

More importantly, the grant of relief to Saranchak here is inexplicable because at least Fahy had filed his own timely appeal to this Court. Here, in contrast, the competent Saranchak did not do so. That we refused to permit Fahy to undo his record waiver on his **own** appeal, based upon a change of mind, but we now allow Saranchak to undo his record waiver even though Saranchak **never** appealed, is indefensible.

Turning to the question of the Court appropriating the Federal Defender's appeal to reinstate Saranchak's PCRA rights, there is, of course, no authority for this judicial sleight of hand. As I discussed at some length in my prior dissenting statement, *Lonchar*—the authority cited by the Federal Defender—involved a valid, first federal habeas petition filed at the eleventh hour by a death-sentenced state prisoner. Nothing in *Lonchar* remotely suggests that a defendant's change of mind and current desire to litigate automatically controls and renders nugatory a previously accepted and affirmed waiver. See *Saranchak,* 767 A.2d at 545–46 (Castille, J., dissenting).

The Federal Defender's reliance on this Court's plurality decision in the capital case of *Commonwealth v. Michael,* 562 Pa. 356, 755 A.2d 1274 (2000) (Opinion Announcing Judgment of Court by Flaherty, C.J.), is also misplaced. In that case, Michael himself—not former counsel—had appealed the denial of PCRA relief. After the appeal had been briefed and submitted to this Court, Michael wrote to the Commonwealth requesting that it forward to the appropriate court a letter in which he stated that he did not wish to pursue any further appeals. Not having yet decided Michael's appeal, this Court remanded to the PCRA court, directing it to conduct a colloquy to determine whether Michael fully understood the consequences of his request to withdraw his appeal and waive further collateral review. At the hearing, Michael reiterated his desire to forgo further litigation and the PCRA court found that he understood the consequences of his request. Thereafter, this Court remanded to the PCRA court for another hearing to augment the record to include psychiatric evidence relating to Michael's withdrawal request, and a hear-

ing was scheduled for this purpose. Prior to the date of that hearing, Michael's counsel informed the PCRA court that Michael had executed an affidavit in which he now claimed that he wanted, *inter alia*, a "quick decision on the merits" of his pending appeal in this Court. At the competency hearing, Michael confirmed that he had in fact changed his mind and wanted to proceed with his PCRA appeal. At the close of the hearing, the PCRA court found that Michael was mentally competent and that he was competent at the time he initially waived further PCRA review. The PCRA court also recognized, however, that Michael's most recent affidavit, as well as his testimony at the competency hearing, suggested a "change of mind." Before this Court could rule on the appeal, Michael apparently changed his mind yet again, indicating in a letter that he did not wish to pursue any further appeals.

A two-Justice plurality of this Court held that, since Michael's post-waiver affidavit expressing his desire to pursue his PCRA appeal essentially repudiated his prior request to forgo further review, merits review of the claims raised in the PCRA petition was appropriate. Finding the claims all to be without merit, the Court affirmed the order of the PCRA court denying relief. This Justice authored a concurring opinion in which I agreed with the majority's determination to review the claims presented in the appeal, but on different grounds. I reasoned that, under *Fahy I*, the non-record affidavit cited by the lead opinion could not undo a prior record waiver of further review. What made the case distinguishable from *Fahy I*, in my view, was that there was no finding of a valid waiver for the Court to review, and Michael's last record expression was to pursue his appeal. *See Michael*, 562 Pa. 356, 755 A.2d 1274, 1283–84 (Castille, J., concurring).[3] Mr. Justice Saylor dissented, expressing the view that, in light of Michael's most recent letter expressing a desire to abandon his appeal, remand to the PCRA court was appropriate for a determination as to whether this latest apparent waiver was knowing, voluntary, and intelligent.

**3.** Messrs. Justices Zappala, Cappy, and Nigro concurred in the result without opinion.

Even setting aside for the moment that *Michael* lacks precedential value, it cannot support the majority's decision here. Like Fahy, but unlike Saranchak, Michael had filed a timely appeal with this Court. The questions concerning his changing desires were all hashed out while this Court had jurisdiction over his appeal. Here, as previously stated, we have no such jurisdiction since Saranchak is competent and did not appeal and, since he is competent, the Federal Defender's appeal was improper.

But even ignoring the jurisdictional issue, the Federal Defender's reliance on *Michael* is misplaced. The Federal Defender contends that two "clear and controlling" principles emerge from *Michael:* "First, this Court disfavors waiver, particularly in capital cases.... Second, in determining whether or not there has been a valid, controlling waiver of a petitioner's rights, it is the petitioner's expression of his or her desires *on the record* that is controlling." Brief in Support of Reinstatement of PCRA Petition at 7 (emphasis in original). Since Saranchak's last record expression was that he wanted to litigate his PCRA petition, the Federal Defender argues, "this expression should be taken as final[,]" and his PCRA rights should be reinstated. *Id.* at 8. The Federal Defender, however, grievously mischaracterizes the content of the *Michael* decision and its relevance here.

As an initial matter, since *Michael* was a plurality decision, no "controlling" principles emerged from the decision—only a mandate. *See Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 750 (1998) ("[A] plurality decision ... lacks precedential value."); *see also Interest of O.A.,* 552 Pa. 666, 717 A.2d 490, 496 n. 4 (1998) (Opinion Announcing Judgment of Court by Cappy, J.) ("While the ultimate order of a plurality opinion, *i.e.* an affirmance or reversal is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority."). Furthermore, nowhere in *Michael* does the Court state that it "disfavors" waivers, in capital cases or in any other context. To the contrary, this Court has repeatedly affirmed valid waivers of further review in capital matters. *See, e.g., Com-*

*monwealth v. Bronshtein,* 556 Pa. 545, 729 A.2d 1102, 1106 (1999); *In re Heidnik,* 554 Pa. 177, 720 A.2d 1016, 1023 (1998); *Fahy I, supra.* Nor does *Michael* remotely provide that a capital defendant's record expression of his desire to undo his previous valid waiver and pursue post-conviction relief necessitates the reopening of collateral proceedings when this record statement comes after this Court has already ruled on the validity of the waiver. Again, in *Michael,* the defendant withdrew his non-record waiver and thereafter stated—on the record in a hearing before the PCRA court—a desire to go forward with his appeal **before** this Court ever ruled on the validity of the purported waiver. In this case, in contrast, because the record evidence unequivocally demonstrated that Saranchak knowingly, intelligently, and voluntarily waived his rights to counsel and post-conviction review and that he was competent when he did so, this Court unanimously held that the waiver was valid. It was only **after** we ruled on the validity of the waiver and dismissed the vicarious appeal that Saranchak changed his mind. Thus, *Michael* is factually inapposite. There is simply no case binding on this Court which supports the majority's conclusion that a waiver of rights may be automatically withdrawn based upon a mere change of mind after this Court has already ruled that it was knowingly, intelligently, voluntarily, and competently entered.[4]

In addition to the fact that there is no affirmative authority for the majority's jurisdictional end-around, reinstatement of Saranchak's PCRA rights is flatly inconsistent with this Court's next-friend standing precedents and the timing and serial petition restrictions of the PCRA. Following the reasoning of the United States Supreme Court in *Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), we have held that a third party, such as the Federal Defender, which seeks standing to pursue a PCRA appeal on

4. Notably, the majority does not rely upon *Lonchar* or *Michael* in reinstating Saranchak's PCRA rights, citing instead select, non-binding decisions of the lower federal courts in *Smith v. Armontrout,* 865 F.2d 1502 (8th Cir.1988) (en banc), and *St. Pierre v. Cowan,* 217 F.3d 939 (7th Cir.2000). *See Fahy II,* 737 A.2d at 221 ("[I]t is axiomatic that decisions of our federal brethren are not binding on this Court.") (citing *Commonwealth v. Clark,* 551 Pa. 258, 710 A.2d 31, 39 (1998)).

behalf of a defendant as his next-friend, must first make two distinct showings. First, the putative next-friend must demonstrate that the prisoner is unable to litigate his own cause due to mental incapacity. In addition, the putative next-friend must prove that it has a significant relationship to, and is truly dedicated to, the best interests of the real party in interest on whose behalf it seeks to litigate. *See Commonwealth v. Haag,* 570 Pa. 289, 809 A.2d 271, 278 (2002); *White,* 734 A.2d at 376; *Bronshtein,* 729 A.2d at 1106; *In re Heidnik,* 554 Pa. 177, 720 A.2d 1016, 1019–20 (1998). In November 2000, this Court unanimously concluded that Saranchak is not incompetent, and that the Federal Defender thus lacked standing to pursue an appeal on his behalf. Nothing in the succeeding months rendered Saranchak incompetent. Indeed, the most recent colloquy conducted by the PCRA court only further confirmed Saranchak's competency. Pursuant to our settled next-friend standing precedents, then, the Federal Defender's petition for reargument of its improper vicarious appeal cannot serve as the vehicle by which Saranchak may seek to undo his valid waivers, since he himself deliberately never appealed the order below.

The reopening of Saranchak's collateral proceedings via an improper next friend appeal also subverts the PCRA's strict time restrictions on the filing of serial petitions. *See* 42 Pa.C.S. § 9545(b). Indeed, the Court admits that the legislative restrictions on PCRA review are an important factor in its innovation of a "reinstatement alternative." The claim that Saranchak has now changed his mind and wishes to pursue post-conviction review should be raised only in a second petition filed in the PCRA court. In reaching this claim raised for the first time on reargument of a dismissed, improper next friend appeal in a case with a competent defendant, the majority subverts the General Assembly's clear and unequivocal restrictions. *See Commonwealth v. Eller,* 807 A.2d 838, 845 (Pa.2002) ("The PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated

in the Act."). I do not think we have the duty, much less the right, to undo the PCRA whenever the fancy strikes us.

The majority's wholesale departure from statutes, rules, and precedent will have significant negative consequences for the orderly administration of justice in this Commonwealth. For one thing, if a capital defendant's mere change of mind automatically necessitates reinstatement of his collateral rights, so long as somebody in the world has taken an appeal in his name, then presumably a stay must automatically issue if we have not ruled on the waiver at least fifteen days prior to the defendant's execution date. Since an appellant has fourteen days within which to file for reargument with this Court, *see* Pa.R.A.P. 2542(a), any decision by this Court less than fifteen days from the execution date would have to be accompanied by a stay of execution to provide the death-sentenced prisoner with sufficient time to change his mind.

I observed in my prior dissenting statement in this matter that:

> If accepted, the position urged by the Federal Defender [that a defendant's change of mind automatically vitiates a previously accepted and affirmed waiver] would seriously alter the salutary waiver doctrine and degrade the solemnity of the proceedings where waiver occurs. If a valid waiver is effective only until there is a change of mind then no waiver is ever final, no matter how clear and unequivocal the defendant's record decision to forgo further proceedings. Any "waiver" can automatically be negated by a subsequent claim that the defendant merely has had a change of heart.

*Saranchak*, 767 A.2d at 546 (Castille, J., dissenting). The Court today, of course, blindly adopts the Federal Defender's absolutist view. In so holding, the Court ignores jurisdictional limitations, *stare decisis*, next friend principles, and the standards governing reargument. Moreover, on the merits, the Court has effectively reduced every valid, on-the-record waiver proceeding to a mere dress rehearsal, which may be subsequently undone at the whim of the waiving party. No rational system of appellate jurisprudence can be based upon

the mere caprice of those who seek its benefits. As I noted before, "Saranchak himself has closed the door to the collateral review process and has done so knowingly, voluntarily and intelligently. The door should remain closed." *Id.*

I do not for a moment dispute the good intentions of the majority. I fully recognize the heavy duty imposed on this Court in capital matters. But this Court has been mistaken before in allowing the difference of death to lead it to *ad hoc* doctrines and approaches which were beyond its proper authority. *See Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1998) (abrogating relaxed waiver on PCRA review because, *inter alia,* contrary to PCRA waiver provision). I think we are traveling down that seductive road again today, misled by our good, but legally irrelevant, intentions.

I respectfully dissent.

Justice EAKIN joins this dissenting opinion.