GREENBERG, Circuit Judge,
concurring.
I join in Judge Ambro’s opinion remanding this case to the district court for the limited purposes of making another determination regarding Michael’s competency before we determine whether to dismiss this appeal and to ascertain if Michael still wants us to dismiss the appeal. Nevertheless, because I have reservations regarding what we are doing and because in joining the opinion I am not being consistent with the position I took twice earlier on this appeal, I write this concurring opinion to explain why I am doing so.
At the outset I want to point out that there are two motions pending to dismiss the appeal: the respondents’ motion and Michael’s constantly repeated pro se letter motion. I focus on Michael’s motion because it is the key to this appeal inasmuch as if he had wanted the appeal to be heard on the merits it likely already would have been heard and decided. On the other hand, unless constrained by Michael’s letter to us on May 5, 2004, if he is competent to make the decision to ask us to dismiss this appeal, I agree with Judge Ambro that we should dismiss the appeal. I do not see how we could do otherwise inasmuch, as I will explain below, Michael did not take this appeal. See Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) (“[T]he accused has the ultimate authority to make [the] decision[ ] ... whether to ... take an appeal.”); see also Faretta v. California, 422 U.S. 806, 834-36, 95 S.Ct. 2525, 2540-41, 45 L.Ed.2d 562 (1975).
The letter of May 5, 2004, which could prevent us from satisfying the obligation that we otherwise would have to dismiss this appeal, asked us to hear his appeal on the merits. But if we decline to dismiss this appeal by reason of Michael’s May 5, 2004 letter, which is his only communication to this court requesting that we entertain the appeal, we would have to disregard Michael’s request on six occasions after May 5, 2004, that we dismiss his appeal. In my view, regardless of what might be appropriate if an appellant repeatedly changes his position on whether his case should be heard on the merits, or has not repeatedly stated that he wants the appeal dismissed, see St. Pierre v. Cowan, 217 F.3d 939, 949-50 (7th Cir.2000); Smith v. Armontrout, 865 F.2d 1515, 1516 (8th Cir.1988), inasmuch as Michael has not taken a seesaw approach on his request that we dismiss the appeal, neither St. Pierre nor Smith is a precedent that could support a decision to deny his motion to dismiss this appeal. Rather, it is clear that if Michael is competent and we do not dismiss this appeal we would not be following the Supreme Court’s direction in Jones that a court must recognize that the accused decides whether to take an appeal. Thus, even though a court of appeals ordinarily exercises discretion in determining whether to dismiss an appeal, see United States v. Hammer, 226 F.3d 229, 234 (3d Cir.2000), in this case it seems clear to me that we do not have discretion to deny Michael’s request or, if we do, that we would abuse our discretion if we did not grant his request.
It is highly significant, indeed remarkable, with respect to the tenuous nature of these proceedings, that Michael did not *422 decide to take an appeal in this case in the first place and, in fact, this case never should have reached this court. Thus, the actual question before us is whether a defendant may cause an appeal filed in his name without his authority by someone else to be dismissed. In this case, the Capital Habeas Corpus Unit of the Defender Association of Philadelphia, without Michael’s authorization, filed the appeal from the district court’s order of March 10, 2004, granting Michael’s motion to dismiss the habeas corpus petition. Thus, this case truly is extraordinary because the Capital Habeas Corpus Unit filed this unauthorized appeal in the name of an appellant whom the district court had found to be competent, from an order that the appellant had sought and obtained and from which, quite naturally, he did not want to appeal.
Moreover, there is yet another extraordinary fact about this appeal. The Capital Habeas Corpus Unit filed the appeal even though the district court in its March 10, 2004 order dismissing the petition for ha-beas corpus also dismissed the Capital Ha-beas Corpus Unit and all its attorneys as counsel for Michael, Michael v. Horn, 2004 WL 438678, at *24 (M.D.Pa. Mar.10, 2004), and neither we nor the district court ever has stayed that order.[12] Accordingly, the Capital Habeas Corpus Unit acted without authority when it filed this appeal in an attempt to frustrate Michael’s wishes. The reality of the situation could not be clearer. The Capital Habeas Corpus Unit, rather than representing Michael, its supposed client, was representing itself and advancing its own agenda when it filed this appeal.
Michael made the situation clear to this court at the outset of this appeal when he wrote an undated letter to Chief Judge Scirica that this court received on April 14, 2004, stating as follows:
My name is Hubert L. Michael, Jr. I recently had my death warrant signed by the governor of Pennsylvania. I am not appealing my sentence.
I was recently able to get the attorneys, with the Defender Association of Philadelphia, dismissed from trying to represent me in any capacity. This was ordered by Judge Thomas Vanaskie of the U.S. District Court.
I am now writing you because I know that the courts had not heard the last of these attorneys with the Capital Habeas Corpus Unit.
These attorneys are not authorized by me, or the courts, to file any petitions, etc., on my behalf. I ask this court to not recognize any petitions filed by these attorneys or any other individual.
I would also like to state for the record the I am one-hundred percent mentally competent. As I pled guilty to homicide, in the Courts of Common Pleas, my mental state is the only avenue for these attorneys to pursue.
*423 Let’s stop this legal merry-go-round by these attorneys.
As anyone can see, and as can be said with respect to all of Michael’s correspondence to this court, the letter was completely clear and coherent and was not the product of an incompetent or mentally disturbed author. Quite to the contrary, Michael demonstrated in his April 14, 2004 letter that he had an excellent grasp of the situation confronting him as the Capital Habeas Corpus Unit already had filed its unauthorized appeal.[13] Accordingly, it is clear that from the very time that Capital Habeas Corpus Unit filed this appeal, the proceedings in this court have been irregular as the appeal never should have been taken.
It is important to remember that the appeal followed district court proceedings in which the court dismissed the petition at Michael’s request only after the most meticulous consideration of his competency. The court started its opinion dismissing the petition by indicating that “[a]t issue in this matter is whether death-sentenced Hubert Michael is competent and has knowingly, rationally, and voluntarily chosen to waive ... a collateral challenge to his state court conviction and sentence.” Michael v. Horn, 2004 WL 438678, at *1 (M.D.Pa. Mar.10, 2004). The court ended its opinion explaining as follows:
To determine whether Mr. Michael is competent to decide to dismiss counsel and this habeas corpus proceeding, this Court sought to provide ‘a constitutionally adequate fact-finding inquiry to make a reliable determination.... ’ Mata v. Johnson, 210 F.3d 324, 327 (5th Cir.2000). That process included (1) a current examination by a highly qualified expert [Dr. Robert Wettstein], (2) an opportunity for the parties to present pertinent evidence, and (3) an examination of Mr. Michael in open court concerning his decision to waive further proceedings. For purposes of this proceeding, Mr. Michael was also appointed independent counsel.
Throughout these proceedings, Mr. Michael has maintained the consistent position that he does not seek federal court intervention with respect to his conviction and sentence. Having found, without hesitation, that Mr. Michael is competent, and has made a knowing, rational and voluntary decision, this Court has no choice but to honor that decision.
As did the death-sentenced inmate in Comer [v. Stewart, 230 F.Supp.2d 1016 (D.Ariz.2002) ], Mr. Michael “has made a competent and free choice, which ‘is merely an example of doing what you want to do, embodies in the word liberty.’ ” 230 F.Supp.2d at 1072. Also worth reiterating here is the Eleventh Circuit’s admonition in Sanchez-Velasco v. Sec’y of the Dep’t of Carr., 287 F.3d 1015, 1033 (11th Cir.2002), affirming a district court’s finding that a defendant competently, knowingly and voluntarily waived federal court collateral review:
[W]e should not forget the values that motivated the Supreme Court’s Whitmore [v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)] decision and what is really at stake in this kind of case. These cases are about the right of self-determination *424 and freedom to make fundamental choices affecting one’s life.... [A] death row inmate ... does not have many choices left. One choice the law does give him is whether to fight the death sentence he is under or accede to it. Sanchez-Velasco, who is mentally competent to make that choice, has decided not to contest his death sentence any further. He has the right to make that choice.... He has never asked [the attorneys] to represent him or consented to have them do so. He has directed them to leave his case alone, and the law will enforce that directive.
Likewise, this Court has no choice but to enforce Mr. Michael’s knowing, rational and voluntary directive that legal challenges to his conviction and sentence cease.
Id. at *23.
In considering this appeal we also should keep in mind that Michael is in an unusual position with respect to his attorney on the appeal, Joseph M. Cosgrove. Michael wants Cosgrove to represent him, and thus he does not view Cosgrove in the negative way he views the Capital Habeas Corpus Unit. Yet as I explained in my dissent from the order denying rehearing on July 7, 2005, “Cosgrove and Michael are working at cross-purposes as it is clear that Cosgrove does not want us to dismiss Michael’s appeal but Michael does.” Michael v. Horn, 414 F.3d 456, 2005 WL 1606069 (3d Cir. July 7, 2005), 2005 U.S.App. LEXIS 13463, at *15.
Why then do we not dismiss this appeal at this time as Michael repeatedly has asked us to do? After all, it might be thought that if he was competent to dismiss the petition for habeas corpus surely he must be competent to dismiss the appeal. The reason is that Dr. Robert Wett-stein, on whom the district court relied in finding Michael competent, since has expressed some words of caution regarding Michael’s competency. Five days before we heard a preliminary oral argument in this case on June 22, 2004, and thus before we issued our limited certificate of appeal-ability in this case dealing only with the discharge of his attorneys in the district court’s March 10, 2004 order, we received a letter that had been signed by Dr. Wett-stein indicating:
I have ... been informed that Mr. Michael represented to the Court of Appeals that he no longer wishes to be executed, but wants the legal issues in his case presented with the assistance of new legal counsel. Based upon his recent change of mind, it is my psychiatric opinion that Mr. Michael’s mental state needs further exploration. His representation that he wishes to litigate his criminal conviction and death sentence should be evaluated.
Later Dr. Wettstein wrote a letter dated January 4, 2006, explaining that “a further evaluation is warranted” because Michael had “again vacillated” with respect to continuing his appeal. At that time Dr. Wett-stein said that he would be willing to make the evaluation. He reiterated that position in another letter about a month later. It appears that he wrote these letters as a result of contact between him and Cos-grove.
Regardless of the etymology of these letters, obviously they should have caused us to pause before we dismissed the appeal, and they did have that effect. Yet we should consider the letters within the context of the actual history of this appeal. As Judge Ambro points out in his opinion, Michael wrote this court on April 14, 2004; November 26, 2004; February 22, 2005; March 28, 2005; May 23, 2005; September 19, 2005; and February 6, 2006, indicating that he does not want the appeal to pro *425 ceed. The only time he took a contrary position was on May 5, 2004, when he requested that the appeal proceed.
It is true, as Judge Ambro also points out, that Michael “made no effort to have our June [2, 2005] order (sending the case back to the District Court) reconsidered or appealed,” but neither Dr. Wettstein nor anyone else can draw any inference from that inaction. After all, could anyone really expect a litigant represented by counsel to file a pro se petition for rehearing or a petition for certiorari? [14] Moreover, when the respondents petitioned for rehearing of the June 2, 2005 order, Michael did not oppose that petition and ask us to adhere to the June 2, 2005 order. If his failure to seek a reversal of the June 2, 2005 order can give rise to an inference that he did not object to the remand, then his failure to object to the respondents’ petition for rehearing or to our August 10, 2005 order granting rehearing of the June 2, 2005 order and recalling the mandate issued following the June 2, 2005 order would require that we draw the reverse inference that he did not want the matter remanded as provided in the June 2, 2005 order.
It is also evident that the fact that he wants Cosgrove to be his attorney does not mean that Michael wants his appeal to be heard and cannot in any way suggest that he is vacillating with respect to that question. Michael clearly wants Cosgrove as his attorney at the same time that he wants his appeal to be dismissed, and there is no reason why this representation should not be permitted inasmuch as Cos-grove has agreed to be his attorney. Though I can understand why it might seem surprising that Michael still wants Cosgrove as his attorney inasmuch as they have different attitudes about whether we should dismiss the appeal, I also understand why he would want Cosgrove as his attorney as they frequently have conferred, and Cosgrove has visited him quite often. Plainly they have had a significant relationship. Indeed, in a letter to this court dated January 9, 2006, Michael described Cosgrove as his lawyer and “friend.”
Now that I have given the background of the case as germane to the remand we are ordering, I will explain why I have reservations about the remand but nevertheless agree to it.[15] I first will explain why I have reservations focusing on Dr. Wettstein’s letters and then explain my more general reservations regarding a remand. My first problem with Dr. Wett-stein’s letters is that I really do not know if he had been given the full picture before he wrote them. After all, as he explained in his June 2004 letter, he was basing his opinion on what he had been “informed,” so that in assessing his letters it would be significant to know what information he had when he wrote them. In this regard I want to point out that in Dr. Wettstein’s January 4, 2006 letter he said that a further evaluation is warranted because Michael had “again vacillated.” Yet the factual basis for the statement is questionable because even if we treat Michael’s February 5, 2005 letter asking for two weeks to reconsider his decision to have this appeal dismissed, to which Judge Ambro refers in his opinion, as reflecting vacillation, on March 28, 2005, he made it clear that he wanted the appeal to be dismissed and he has adhered to that position ever since. *426 Thus, from March 28, 2005, until January 4, 2006, Michael simply had not vacillated.
But I do not want to protract these proceedings any longer by suggesting that we remand the case for the district court to ascertain what information Dr. Wett-stein had when he wrote his letters as a preliminary step before we determine whether we should remand the case for a further evaluation of Michael’s competency. I reject this idea of a preliminary remand because a study of the record in this case shows that actually Michael has been quite consistent in his wish that we dismiss this appeal. Moreover, Dr. Wett-stein has not repudiated the conclusion he stated to the district court that Michael at that time was competent to make the decision to dismiss the habeas corpus proceedings. He has suggested only that Michael be evaluated further. It seems clear to me that Michael has been consistent because Michael’s only real inconsistency with respect to his wish to dismiss this appeal was on May 5, 2004, when he asked that we hear the case. It is true that, as Judge Ambro has explained, and I already have indicated, on February 5, 2005, Michael asked for two weeks more to consider whether he wanted the appeal dismissed following which on March 28, 2005, he said he wanted it dismissed. It would be a stretch, but I suppose that a person asking for time to think over a decision could be characterized as vacillating.
In considering whether Michael’s hesitation, which at the latest ended 16 months ago, can be regarded as indicating that he has been vacillating to such a degree as to reflect on his competency, we should remember what every judge and attorney knows, i.e., litigation whether criminal or civil does not go forward in a straight line, and litigants whose competency cannot be questioned and, in fact, is not questioned change their minds regarding critical issues during the course of litigation. I will give two examples known to everyone familiar with judicial proceedings.
Federal Rule of Criminal Procedure 11(b) sets forth a detailed list of requirements that a court must follow before accepting a plea of guilty, and state courts have similar procedures. One might suppose that when courts follow those rules, as they almost always do, and the defendant pleads guilty, that he quite conclusively has waived his right to a trial at least with respect to whether he is guilty of the offense for which he has been charged.[16] Yet there is an extensive body of case law dealing with motions by defendants to withdraw pleas of guilty. See, e.g., United, States v. Jones, 336 F.3d 245 (3d Cir.2003). Obviously a defendant making such a motion has changed his mind and can be said to have vacillated but can anyone believe that merely because he does so that the court should order that a competency evaluation be made of him?
It often correctly is said that the parties resolve most civil litigation through settlement agreements. But, as judges and attorneys know, a settlement does not always resolve the controversy at hand. That circumstance has given rise to much litigation dealing with enforcement of settlements, frequently because parties have changed their minds and reject settlements they earlier approved. See, e.g., Commc’n Workers of Am. v. N.J. Dep’t of Personnel, 41 Fed.Appx. 554 (3d Cir.2002) (per curiam) (“The National ... notified the district court that the National no longer consented to the proposed settlement.”). Should we conduct competency *427 evaluations of civil litigants who reject settlements to which they have agreed?
In the context of what is involved in this case, I regard Michael’s hesitation about this appeal going forward as not reflecting on his competency at all. For him this case has not involved money or even liberty. Rather, this litigation involves the ultimate question of life or death. If faced with his choice, the most competent and stable person might hesitate or vacillate before dismissing an appeal in an action that, if continued, surely would delay the execution of a death sentence, as it already has with respect to Michael, or, even if the chance of success may seem remote, actually preclude it.[17] Moreover, as I have explained, his actual degree of vacillation has been quite minimal. Thus, inasmuch as Dr. Wettstein has predicated his call for Michael’s further evaluation on Michael’s vacillation I have serious questions about the efficacy of Dr. Wettstein’s suggestion. Accordingly, I have two problems with Dr. Wettstein’s letters. First, I do not know that they reflect what actually happened with respect to Michael’s vacillation. Second, I doubt that Michael’s vacillation can be regarded as so significant with respect to his competency that it casts doubt on the prior unassailable determination of the district court that he was competent to decide whether this litigation should go forward.
As I said earlier, in addition to questioning whether Michael’s minimal vacillation calls for his further evaluation, there are two more general reasons not specifically dealing with Michael’s competency why I am agreeing with reluctance to a remand for a further evaluation. To start with there is no doubt about Michael’s guilt. He did, after all, plead guilty. While I am aware that a defendant sometimes will plead guilty to a crime he has not committed, that did not happen here. After Michael murdered Trista Eng, he concealed her body in a wooded area. The body was not found until he confessed to his brother more than a month later that he murdered her and told him where he had concealed the body. His brother and other family members searched for and found the body and only then notified the Pennsylvania state police about the situation. Clearly, only the murderer could have known where the body could be found. Thus, this is not a case in which there is even a remote possibility that an innocent defendant has been convicted.
The second general reason not specifically related to Michael’s competency why I have reservations regarding the remand concerns Trista Eng herself as well as her family. I realize that it sometimes seems that the criminal law is more concerned with defendants than victims. I regret this fact, but it is inevitable as a prosecution and trial focus on what the defendant did and the procedures that must be followed with respect to his plea and, depending on his plea, to his trial. Yet this imbalance has caused concern among legislative bodies and it is good to be able to note that they have taken steps to redress the imbalance such as by passing victims’ rights statutes.
More than 13 years have passed since Michael murdered 16-year old Trista Eng who was a total stranger to him. He encountered her when she was on her way to work at a Hardees restaurant where she had a summer job. In a wanton and senseless act, he murdered her because he faced rape charges involving another woman that he felt were not justified. He pleaded guilty to murdering Trista Eng, *428 and the Pennsylvania Supreme Court upheld his conviction on a mandatory appeal, Commonwealth v. Michael, 544 Pa. 105, 674 A.2d 1044 (1996), and later affirmed the trial court’s denial of post-conviction relief. Commonwealth v. Michael, 562 Pa. 356, 755 A.2d 1274 (2000). Then, at Michael’s own request at a time that he undoubtedly was competent, the district court dismissed the habeas corpus proceedings started in his name. There can be no doubt that Michael was competent when he asked the district court to dismiss the habeas corpus proceedings. Indeed, when we issued the certificate of appeala-bility in this case we did not even mention a competency question, and thus even if we did not dismiss the appeal we could not review the district court’s determination that Michael was competent to cause the habeas corpus proceedings to be dismissed.
I cannot help but think that the proceedings in this case must be torturing the family of Trista Eng. Her family knows what everyone who is familiar with this case knows, i.e., Michael murdered her, and though he has been sentenced to die and the Pennsylvania courts have upheld his conviction and sentence both on direct appeal and on a collateral review, the sentence has not been carried out. Though no one can say for sure how Trista Eng’s life would have unfolded, I can say that if Michael had not murdered her she would now be a 29-year old woman and would have had an opportunity to live her life and to marry and have her own family. Michael deprived her of that opportunity.
Indeed, I cannot help but wonder whether Michael has sought to terminate these proceedings because he recognizes the harm that he has done to Trista Eng and her family and has been trying to terminate the judicial proceedings knowing that if he does so he will make amends so far as he now can do. I say this because surely he must have felt remorse after he murdered Trista Eng for I can discern no other reason why he confessed to his brother that he had murdered her. Thus, it seems that, notwithstanding the crime that Michael committed, he plainly differs from the remorseless defendants that courts sometimes see who exalt in what they have done.
I ask this question: Does not the court system owe anything to Trista Eng and her family and, so far as it can do so, while acting consistently with the law, should it not bring her family’s torture to an end, particularly when the person responsible for her murder wants it ended? I know that with respect to criminal punishments death is different. See Furman v. Georgia, 408 U.S. 238, 306-07, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring). But cannot the same thing be said with respect to the effect of the crime of murder on the victim and her family as compared to all other crimes? Is our law so one sided that at a trial and on appeals only the defendant is of any importance?
Anyone who reads my opinion might wonder why, instead of joining in Judge Ambro’s opinion, I am not dissenting and voting to dismiss this appeal. Moreover, in this regard a reader could point to my dissent from the June 2, 2005 order remanding the case in which I said that I would dismiss the appeal and my dissent from the order denying the petition seeking a rehearing of the June 2, 2005 order in Michael v. Horn, 414 F.3d 456, 2005 WL 1606069, 2005 U.S.App. LEXIS 13463, at *26, in which I indicated that I believed that “the panel should grant rehearing, vacate the June 2, 2005 order, and dismiss the appeal.” Indeed, a reader reasonably could assert that by joining in Judge Am-bro’s opinion I am vacillating.
*429 But in the end there are three reasons why I am not dissenting and instead am joining in Judge Ambro’s opinion. First, of course, I believe that regardless of the considerations I have set forth, Judge Am-bro’s opinion is correct and I cannot allow my personal view of a case to trump my obligation to follow the law.[18] Second, at the time of the June 2, 2005 order remanding the case and at the time of the denial of the petition seeking rehearing of that order the situation was different than it is now because the panel was remanding the matter to the district court “for further proceedings to determine whether habeas corpus relief is warranted,” thus opening up the entire case in the district court in complete disregard of the limitations in our certificate of appealability, and the panel was adhering to that position when denying rehearing. I thought that these orders were not justified. Now the panel is taking what seems to me to be the more reasonable and nuanced position that Michael be reevaluated. Thus, the choice I face now is different from that which I faced a year ago.
Third, I have reconsidered the district court’s opinion in this matter in the light of Judge Ambro’s opinion and have taken particular note that the district court indicated that in considering Michael’s competency its “process included ... a current examination by a highly qualified expert,” ie., Dr. Wettstein. Indeed, the district court listed Dr. Wettstein’s examination as the first step in its three-step competency inquiry. Now that that highly qualified expert believes there should be a further evaluation, whatever my reservations, I think that it is appropriate to accede to his suggestion.
In closing I want to comment on the limited scope of our remand. We are remanding the case for the district court to determine if Michael is competent to dismiss this appeal. If he is and he adheres to his decision to dismiss the appeal, we will do so and the appeal will be over. In that event it will not matter whether the determinations that the district court made leading to its order of March 10, 2004, dismissing his habeas corpus petition were correct or incorrect as we cannot review them.
On the other hand, if Michael is not competent to dismiss the appeal or if he is competent to do so but asks us to adjudicate it on the merits we will not dismiss the appeal. Rather, we will decide the appeal. In that event we will have jurisdiction to answer only the single two-part question on which we granted a certificate of appealability on June 30, 2004, “whether the District Court violated 21 U.S.C. § 848(q)(4)(B) by dismissing counsel for Hubert Michael and, if the District Court so erred, whether the error was harmless.” See Miller v. Dragovich, 311 F.3d 574, 577 (3d Cir.2002).
I make the foregoing point so that it should be clear that the proceedings on the remand need not be protracted. The district court on the remand will not be dealing with a quasi-motion for reconsideration of its March 10, 2004 decision and order and will not be reexamining its original determinations including, in particular, its determination that Michael was competent to cause the habeas corpus proceeding to be dismissed and that he had made “a knowing, rational and voluntary decision” to cause it to be dismissed which the court was obliged to honor. It will be dealing with his competency now to dismiss this *430 appeal. Thus, any reference to Michael’s competency during the period this case was pending in the district court or to the evidence on that issue can be germane on the remand only insofar as it may have bearing on his competency now.
For all the reasons that I have stated and notwithstanding my reservations, I join in Judge Ambro’s opinion ordering a remand in this case for the limited purposes that the district court determine Michael’s competency to dismiss the appeal and for the district court to ask Michael whether he still wants us to dismiss the appeal.

. The Capital Habeas Corpus Unit filed its notice of appeal solely on behalf of Michael and did not recite in the notice of appeal that it was appealing on behalf of itself. In accordance with our practice the clerk of this court entered an order on April 13, 2004, appointing the Capital Habeas Corpus Unit "to continue to represent” Michael on this appeal, thus demonstrating that the clerk did not know that the district court had dismissed the Capital Habeas Corpus Unit as counsel for Michael. It is understandable that the clerk did not know that the district court had dismissed the Capital Habeas Corpus Unit inasmuch as the Capital Habeas Corpus Unit filed the notice of appeal. In any event the clerk made the appointment after the Capital Habe-as Corpus Unit filed the appeal so the clerk’s order could not have given it the authority to file the notice of appeal. The appointment did not last long for a panel of this court revoked it on May 4, 2004.

. I am uncertain when Michael found out that the Capital Habeas Corpus Unit filed the appeal, and thus I am uncertain if he was aware that it had filed the appeal before he wrote the April 14, 2004 letter. I do know, however, from the certificate of service attached to the notice of appeal that the attorney for the Capital Habeas Corpus Unit served the notice of appeal solely on a Pennsylvania Assistant Attorney General and that he did so by mail on April 8, 2004.

. The only ways Michael could have challenged the June 2, 2005 order was to petition for a rehearing or for certiorari.

. Actually my opinion already makes it obvious that I have reservations about the remand so my explanation of the reasons for the reservations at this point merely expands on what I have said.

. Sometimes a separate proceeding is required for determination of the sentence to be imposed. In fact, that was the situation in Michael's prosecution.

. Michael was aware of similar possibilities if he kept the district court proceedings going, but he elected not to do so. Michael v. Horn, 2004 WL 438678, at *11.

. If I had written the majority opinion, in some respects it would have differed from what Judge Ambro wrote. But it is always true that even though judges agree on the appropriate outcome of a case, they would not write identical opinions.